CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ERRORS

OF THE

# STATE OF CONNECTICUT.

---

THE SCHOLFIELD GEAR AND PULLEY COMPANY *vs.*
JOSEPH J. SCHOLFIELD.

Second Judicial District, Norwich, May Term, 1898. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The plaintiff, a manufacturing corporation, alleged in its complaint
that the defendant, while the owner and manufacturer of certain pat-
ented mechanical appliances, falsely and fraudulently represented
to certain named individuals who afterwards became the plaintiff's
sole stockholders and directors, that such appliances had achieved
a practical success, that there was a large demand and ready market
for them as fast as they could be made, and that their manufacture
was a profitable business; that such representations were known
to be false by the defendant, and were made to induce and did in-
duce said individuals to organize the plaintiff corporation and in
its behalf to purchase the defendant's patents and manufacturing
plant and carry on the business; and that in consequence thereof
the plaintiff had lost the $5,000 paid to the defendant and $3,000
of its capital which had been invested in said business. The
complaint also alleged the repetition of the false and fraudulent
statements by the defendant to the plaintiff's directors after the
formation of the corporation. *Held:* —

1. That proof of either set of representations — those made to the indi-
viduals or those made to the same men as directors — would sustain
the action.
2. That in determining whether the representations alleged were true,
or were believed by the defendant to be true, on reasonable grounds,
the jury might consider other representations which had been

Scholfield Gear & Pulley Co. *v.* Scholfield.

given in evidence relative to the defendant's patents and business, made by him about the same time to the same individuals or some of them.

3. That the representations alleged were more than mere expressions of opinion, and justified the trial court in referring to them in the charge as " representations," and in observing that they " related to matters of fact of which the defendant had knowledge."

The defendant claimed and offered evidence that the plaintiff's losses were due to defective workmanship and to lax, expensive management. Having been correctly instructed in respect to damages the jury, after several hours' deliberation, came in with a verdict for the plaintiff for $2,500, whereupon the court requested them to retire and consider further the question of damages, saying, in effect, that it was admitted that the plaintiff had paid the defendant $5,000, and that this sum was the least the plaintiff claimed. Shortly afterwards the jury returned a verdict for the plaintiff for $5,001, which the court accepted. *Held* that the sudden increase in the amount of damages awarded must have been due to the remarks of the court in returning the jury to a second consideration; that these remarks were not warranted, as the jury had a right, in estimating compensatory damages, to deduct from the plaintiff's claim all losses which in their opinion were due to its fault; that the original verdict for $2,500 should have been accepted, and that a new trial would be awarded unless the plaintiff would remit the amount of the verdict in excess of $2,500.

Verdicts are often and properly the result of mutual concessions; and the fact that a verdict is reached by a compromise is of itself no reason for refusing to accept it.

A corporation comes into existence, as an artificial person, at a particular moment of time; but its rights and liabilities are largely dependent upon prior events.

A joint stock corporation organized under our laws has a qualified existence from the date of its first meeting, and may sue for false representations made to it after such meeting but before its organization certificate has been filed for record, provided such representations were acted upon after the corporation was entitled to do business, and were designed to induce such action.

An action for false representations is maintainable if it is shown that they were made (1) either knowingly or recklessly, with an intent to deceive; or (2) under an unreasonable, groundless belief of their truth and with intent to induce the plaintiff to act upon them.

A plaintiff is not debarred from a recovery for one fraudulent representation merely because he fails to prove other fraudulent representations alleged.

It is one of the chief functions of the court, in every trial to the jury, to direct their attention to the important evidence upon each side, and to its bearing on the issues. In the performance of this duty the trial judge has a right to express his opinion as to the weight

and relevancy of any testimony, and it is often highly desirable that he should do so.

The jury were told that it was not enough for the defendant to say that there were other representations or other circumstances which might have been the operative inducement; that the representations charged need not have been the sole inducement provided the jury were satisfied that they were the "very ground" of the transaction, and a proximate, immediate and material cause. *Held* that this instruction gave the defendant no just ground of complaint.

While the jury ought not to be left in doubt whether requests to charge, which are read aloud by the trial judge in their hearing, are intended as instructions for their guidance, yet if the parties argue the appeal in this court upon the assumption that the requests of each, so far as they were read, were given, it is fair to presume that the jury so understood the charge.

Argued May 31st—decided July 26th, 1898.

ACTION to recover damages for false and fraudulent representations concerning the operation and efficiency of certain patented inventions, brought to the Superior Court in New London County and tried to the jury before *George W. Wheeler, J.;* verdict and judgment for the plaintiff for $5,001 damages, and appeal by the defendant for alleged errors in the charge of the court to the jury. *Error and new trial granted nisi.*

The complaint stated this case: On October 17th, 1895, the defendant owned certain patents for improvements in split pulleys and wheels, cotton speeder gears, and in driving bobbins in speeder and roving frames, and had a plant for the manufacture of screw hub gears, at Providence, and was engaged in that business. Said screw hub gear was made in adjustable parts, and designed for fitting upon the small shafts of a machine easily and quickly, without taking apart the machine or the fixtures on the shaft, whenever it was desired to replace a worn out gear of one piece of the old style. All cloth mills use many such solid gears in one piece, and they wear out frequently. Such an adjustable "screw hub gear" would be, if it worked successfully, in great demand. The defendant had previously, in 1894 and 1895, negotiated with five persons, Smith, Lee, Collins, Shan-

non and Lucas, for the purpose of interesting them in his
patents, and getting them to organize a corporation to buy
of him his plant and the right to make and sell such gears
under his patents.  For the purpose of inducing them to
form such corporation and make such contract with and pay-
ments to the defendant, he stated and represented to them
that he had already made a large number of said screw hub
gears and sold and delivered the same to a large number of
mills; that such gears had been successfully applied and
used and were in successful operation and were a practical
success; that there had never been any trouble with them
or complaint about them and that there was a large demand
and a ready market for them as fast as they could be made;
and that the making of such gears was a good and profitable
business.  Said Smith, Lee, Collins, Shannon and Lucas
believed said statements and relied upon them, and were
thereby induced to unite and form and did form the plain-
tiff corporation, under the general incorporation laws of
Connecticut, on October 17th, 1895, and they all became
stockholders and the only stockholders of the same, and were
all five duly elected and became the five directors of said cor-
poration; and said corporation was formed for the sole pur-
pose of making such contract with the defendant and securing
from him the right to make and sell such screw hub gears
under his said letters patent, and making and selling the
same.

Afterwards the defendant, to induce the plaintiff and its
directors to make a contract with him, made to said direct-
ors the same statements, above mentioned, which he had
made to them individually before.  By reason of said state-
ments, which the plaintiff believed and relied on, the de-
fendant induced it to make such a contract with him, on
October 23d, 1895, and to pay him $5,000, and enter on the
manufacture of said gears under said contract, at large ex-
pense.  Said statements so made by the defendant were
false, and he well knew at the time he so made them that
they were false, and he made such statements with intent to
induce said Smith and others, aforesaid, to unite and form

said corporation and make such contract, and to induce such corporation, through its said directors and officers, to make such contract with and payments to the defendant and engage in said business, and thus to cheat and defraud the plaintiff, and did thereby cheat and defraud it as aforesaid to its great damage, out of its said $5,000 paid by it to him under said contract, and the further sum of $10,000 for the trouble and expense incurred by it in preparing for the manufacture and in manufacturing such screw hub gears. Said screw hub gear at that time was not a practical success, and would not work, and had been condemned by mills which had tried the same, and was useless, because it could not be made fast and secure on the shaft, and because it did not mesh and run true and in line with its fellow gear, and there was no demand and market for such gears and the plaintiff could not sell the same, and was put to great trouble and lost all its money expended in the manufacture of said gears and carrying on said business.

The contract was made part of the complaint. It was dated October 23d, 1895, and its main provisions were as follows: The defendant granted to the plaintiff the exclusive right to manufacture and sell, from said date until January 1st, 1897, split pulleys, gears, wheels and all other machines or parts of machines covered by said letters patent, and let to it his movable manufacturing plant, material, and manufactured goods, then at Providence. The plaintiff agreed to pay him therefor $5,000 on or before October 23d, 1895, and thereafter a royalty of ten per cent on its gross sales of gears and pulleys manufactured by it. It was contemplated that on or before January 1st, 1897, the plaintiff should become the absolute owner of the patents, and increase its capital stock to provide for their purchase, by such amount as would permit it to pay the defendant $20,000, and such further sum as should be represented by one third of its entire capital stock as so increased, and should further provide itself with a working capital of at least $10,000, and upon all this being done the defendant was to assign the patents and convey, absolutely, the plant and stock leased.

and was to be entitled to subscribe for and receive enough of the new stock to amount to a third of the whole stock, the same to be full paid and non-assessable, and also to be paid $20,000. But if the capital were not thus increased, and said stock and cash delivered to the defendant, then the plaintiff should pay him the cost price of the stock leased, being $1,205, the same to be in full of all damages for such failure to purchase said patent rights, and all rights thereunder were then to revest in him, and the plaintiff was also to redeliver to him at Providence all the plant leased, in good condition, with any new patterns it might have made.

An answer was filed containing two defenses. The first was, in the main, a denial of the complaint, but admitted certain of its allegations in part, in the same manner as the second defense, by reference thereto. The second was as follows : " Prior to October 17th, 1895, said George S. Smith applied to the defendant for an option to purchase the defendant's said patents and business, and the defendant gave to said Smith such option for a limited time, and subsequently said Smith introduced to the defendant the said Lee and Collins who, with said Smith, personally examined defendant's said business and products. The defendant made to the said Smith, Lee and Collins, the statements alleged in the complaint, and said statements were true and were fully and thoroughly investigated and verified by said Smith, Lee and Collins, prior to the formation of said corporation. Said statements were not made by the defendant for the purpose of influencing or inducing the said Smith, Lee and Collins to form a corporation for said purchase, or to make said contract with and payments to the defendant, but were made in response to inquiries of said parties in regard to the business of the defendant, and in connection with a personal investigation of said business and products by the parties aforesaid. Subsequently said Smith, Lee and Collins procured the said Shannon and Lucas to join with them in the formation of said corporation, and to make the contract with the defendant, annexed to said complaint, and said parties united in forming said corporation, relying entirely upon the repre-

sentations and investigations of the said Smith, Lee and Collins. On said October 17th, 1895, the plaintiff corporation was organized, and concurrently therewith the plaintiff made said contract with the defendant and paid the defendant the sum of five thousand dollars, as therein provided. The defendant has performed all the matters and things in said contract by him agreed to be performed." This defense was denied.

A counterclaim was also filed, stating that the plaintiff had made and sold a large amount of gears and pulleys under the contract, and never accounted for these sales or any royalties therefor, and claiming an account. To this the plaintiff answered, admitting gross sales to the amount of $1,530, and that a royalty of $153 thereon might be deducted from any amount found due to the plaintiff, or if nothing was found due to the plaintiff, then that he might take judgment for that sum.

Each party introduced evidence in support of his pleadings. The plaintiff introduced the written option given to Smith (who had been a traveling salesman for the defendant) which read as follows :

" May 15th, 1895.   Mr. GEO. S. SMITH, of Norwich, Conn.

" Dear Sir : In reply to your verbal request made to me this day ; I will sell, to a company which may be equitably formed and properly organized to purchase, manufacture, sell, or to operate, my inventions and improvements relating to Pulleys and Gears, all of the several United States Patents which I now hold, and the several applications for improvements thereon which are now pending in the U. S. Patent Office, together with all the patterns which I now have for the said Pulleys and Gears, and the special machines and tools which I use in their manufacture, and also all the finished and unfinished stock of Pulleys and Gears of the various kinds which I have on hand at the time of any consummation of said sale ; for the sum and consideration of one third (1/3) of the capital stock—unassessable—in such organization and the payment to me of twenty-five thousand

dollars ($25,000) in cash at the time of transfer of said Patents, and said other property. This offer to hold good until June 1st, 1895. Respectfully, JOSEPH J. SCHOLFIELD."

Said option was thereafter extended to October 1st, 1895.

The charge given to the jury, and the instructions given and refused, sufficiently appear in the opinion.

The jury retired for consideration of the case at 12:03 P. M. They "rapped" at 4:40 P. M., and announced a disagreement. The court then said to the jury that the trial had been a long one, that there had also been a previous trial, and that it was a very serious matter to have a case of this sort before the courts undisposed of; so serious a matter to the State and to the litigants that he did not feel justified in discharging them without a consideration of this case further; adding: "Courts and juries exist for the purpose of determining matters that come before them. I know how difficult it is for twelve men to agree upon matters where there is a great deal of evidence on one side and on the other, but I think that in this case you can agree."

At 9:04 P. M. the jury came in with a written verdict, which was passed to the clerk, who handed it to the court, by order of the court, and it was not read by any one except the judge. It was a verdict for the plaintiff to recover $2,500 and costs. The court regarded this as a compromise verdict and sent the jury back for further consideration, under General Statutes, § 1104, with some further remarks, which are stated in the opinion.

At 9:24 P. M. the jury rapped again, and were called into the court room and addressed by the court as follows:—

"Before I take your verdict, gentlemen, there is a word I ought perhaps to have said to you when I spoke to you a few moments since. It is this: that if the issue be found for the plaintiff, then from any damages found to have been done the plaintiff must be deducted the one hundred and fifty-three dollars royalties due to the defendant on the contract; and if that has not entered into the consideration of the jury, you may retire with that information before you.

The jury once more retired, and came in again at 9 : 46 **P. M.**, with a verdict for the plaintiff to recover $5,001 and costs, which was read aloud by the clerk and accepted by the court.

The trial before the jury had occupied seven days; a former trial resulted in a disagreement.

No claim was made on the trial by the defendant that any deduction should be made from any loss or damage found to have resulted to the plaintiff, except for said sum of $153.

*W. A. Briscoe*, and *Warren R. Perce* of Rhode Island, for the appellant (defendant).

It was error to charge the jury that the two defenses submitted by the defendant constitute but one defense, and that each is equivalent to the other. Cooley on Torts, *493, 494; *Rawlings* v. *Dean*, 80 Mo. 614. A trial judge " should never so frame his instruction as to assume a disputed state of facts as proven." Thomp. on Charging the Jury, 73, and the numerous cases there cited. See also Thomp. on Trials, § 1037; Elliott's General Practice, §§ 900, 901. The trial judge erred in not charging the jury that the expressions of the defendant were matters of opinion, and in charging that the same were representations of fact that the gear business was a demonstrated success. Cooley on Torts, *483; *Page* v. *Bent*, 2 Met. 371, 374. Representations of values are expressions of opinions. *Homer* v. *Perkins*, 124 Mass. 431; *Gordon* v. *Butler*, 105 U. S. 553; *Ellis* v. *Andrews*, 56 N. Y. 83; *Gustafson* v. *Rustemeyer*, 70 Conn. 132. Representations of the value and utility of machines and the like are mere matters of opinion. *Neidefer* v. *Chastain*, 71 Ind. 363. And so of representations concerning profits that may be made in the future. *Pedrick* v. *Porter*, 5 Allen, 324. The trial judge erred in charging the jury that the action could be maintained by proof of either the representations to the individuals or to the directors. The judge seems to have overlooked the fact that the sole plaintiff in this action is the corporation, and to have failed to discriminate between representations which were made to individuals before the corporation had any existence whatever, and representations

made to the corporation after it was created and established. Kerr on Fraud and Mistake, 92; *Baker* v. *Jewell*, 6 Mass. 460, 462. Thomp. on Corp. § 480.; *Gent* v. *Ins. Co.*, 107 Ill. 658; *Richmond Factory Asso.* v. *Clarke*, 61 Me. 351; *Penn. Match Co.* v. *Hapgood*, 141 Mass. 145; *Utley* v. *Union Tool Co.*, 11 Gray, 139; *Rockford, etc., R. Co.* v. *Saye*, 65 Ill. 328; *Stowe* v. *Flagy*, 72 id. 397; *Bigelow* v. *Gregory*, 73 id. 197; *Providence, etc., Co.* v. *Kent, etc., Co.*, 19 R. I. 561; *Ireland* v. *Globe, etc., Co.*, 20 id. 192. The instructions as to damages were incorrect and prejudicial to the defendant. They were, in effect, a direction to allow at least $5,000. In view of the claims and evidence of the defendant this was clearly error. *West* v. *Anderson*, 9 Conn. 107. It was error to charge the jury that express evidence of the defendant's intent to deceive need not be offered. Kerr on Fraud and Mistake, 55. *Wheeler* v. *Randall*, 48 Ill. 182; *Hartford Ins. Co.* v. *Matthews*, 102 Mass. 221, 222; *King* v. *Eagle Mills*, 10 Allen, 548, 551; *Campbell* v. *Hillman*, 15 B. Monroe (Ky.), 508, 517; *Furman* v. *Titus*, 40 N. Y. 284; *Byard* v. *Holmes*, 34 N. J. L. 296; *Still* v. *Little*, 63 N. Y. 427. It was error to charge that all the representations related to matters of fact, of which the defendant had knowledge, and in omitting to charge that certain of the representations were matters of opinion and not of fact; and further to lead the jury to infer that all statements about the defendant's business and its prospects were material representations as to matters of fact. Kerr on Fraud and Mistake, 82, notes 3 and 4; *Holbrook* v. *Connor*, 60 Me. 578; *Hunter* v. *McLaughlin*, 43 Ind. 38; *Dillman* v. *Nadelhoffer*, 119 Ill. 567.

*Donald G. Perkins*, with whom was *William H. Shields*, for the appellee (plaintiff).

There is really but one question of law open to the defendant, or of any importance on this appeal, and that is whether the trial court was correct in its ruling that the corporation could base its action on false representations made prior to its organization, to the individuals who formed it. The statements were made for the express purpose of inducing

and causing the formation of the company and inducing and controlling its action when formed in making the contract, and were made and intended for the benefit of the company and to be acted upon by it.   This brings the case in all respects fully within the general principle of the law, that any one for whom the representations made were intended, can rely and ground an action of deceit upon them.   Bigelow on Fraud, 545 ; *Iowa E. Heater Co.* v. *Amer. Heater Co.*, 32 Fed. Rep. 735 ; *Stanton* v. *N. Y. & E. R. Co.*, 59 Conn. 285. No claim was made at the trial that the representations alleged were mere matters of opinion, and not material representations as to facts, and the record discloses no claim made by the defendant on that point.   The defendant, if he intended to claim that the representations alleged were not material, should have made the point and asked a ruling directly upon it.   The charge set out in the sixth reason of appeal, that express evidence of intent to deceive was not necessary, was correct.   Bigelow on Fraud, 535–537; *Collins* v. *Dumain*, 12 Met. 550 ; *Morse* v. *Dearborn*, 109 Mass. 596. That the plaintiff had a right to rely upon the defendant's representations, is supported by Bigelow on Fraud, 523; Benjamin on Sales, 429 *n.* ; *Watson* v. *Atwood*, 25 Conn. 320 ; *Beckwith* v. *Ryan*, 66 id. 595.   The court charged the jury fully as to the duty of the plaintiff to prove the facts necessary to constitute his case.   That the representations need not be the sole cause, was correct.   Bigelow on Fraud, 543; Benjamin on Sales, § 429 *n.*; *Sprague* v. *Taylor*, 58 Conn. 551 ; *Sanford* v. *Grout*, 120 Mass. 24.   The jury had a right to take other representations into consideration.   *Morehouse* v. *Northrop*, 33 Conn. 386.   As to the rule of damages, the court charged correctly.   The only items of damage claimed were the $5,000 paid the defendant and $3,000 additional, being the balance of its capital stock expended in preparing for and carrying on the business.   The only items in issue and claimed, were the direct and proximate results of the false representations, and the verdict of $5,000 did not and could not include anything else.   The plaintiff conceded and allowed the royalties claimed by the defendant.   Even though

the court were to find error in the rule of damages and no error in other respects, a new trial should be limited to the question of damages. *Clyma* v. *Kennedy*, 64 Conn. 310.

BALDWIN, J. The complaint charges the defendant with having made certain false and fraudulent statements to five individuals, who are named. Both of the defenses set up in the answer admit that the statements alleged were made; but say that they were made only to three of these individuals, and assert their truth. The second defense adds that one of the three then had an option to buy the defendant's patents and business, and asked for the information; that the other two men named in the complaint united with them, at their request and solely upon their representations, in forming the plaintiff corporation and procuring the contract afterwards made between the parties; and that the defendant has fully performed the contract on his part. The complaint also charges that the false and fraudulent representations declared on were afterwards repeated by the defendant to the plaintiff corporation, to induce it to execute the contract. This the first defense denies; but the second does not, and by this failure to meet a material allegation admits its truth. Practice Book, p. 16, Rule IV., § 4. It follows that the instruction given to the jury, that each of these defenses was the equivalent of the other, can constitute no ground of exception on the part of the defendant. It was too favorable to him. It allowed him to dispute what he had omitted to deny.

Each of the five individuals named in the complaint testified that the statements charged were made to them at a certain interview between them and the defendant. He testified that he did not remember what was then said, and there was no evidence to contradict what was sworn to by the others. Under these circumstances the trial judge committed no error in saying to the jury that, as he understood their testimony, it substantially supported, taken as a whole, the allegations of the complaint as to the statements in question. This left the question of their credibility to the jury, and

simply directed the attention of the latter to the uncontradicted evidence on a material point.

The charge in relation to the proof adduced of the repetition of these statements, after the organization of the plaintiff company, to the same men as its directors, was also unexceptionable. It contained a recapitulation of what the main witnesses, and particularly the defendant, had said, and then expressed the opinion of the court that it appeared from this testimony to be undisputed that certain specified representations were made, but that it was for the jury to say whether these were in whole or in part in substantial conformity with those charged in the complaint.

It is one of the chief functions of the court, in every trial to the jury, to direct their attention to the important evidence which has been introduced, on the one side and the other, and to its bearing on the issues closed. In performing this office, the judge has always a right to express his opinion as to the weight as well as to the relevancy of any testimony, and it is often highly desirable that he should do so. *State* v. *Fetterer*, 65 Conn. 287, 291 ; *Wheeler* v. *Thomas*, 67 id. 577.

It is further urged that the court erred in referring to the statements of the defendant as representations ; and that they should have been described as the expression of matters of opinion, merely. One of the issues before the jury was whether the defendant had told the directors what it was alleged that he had told them. If any of his remarks were mere expressions of opinion on which they had no right to rely, the averments in respect to them might have been made the subject of a motion to expunge, or a demurrer. No such objection was taken, nor was any point of this kind suggested in the requests for instructions to the jury submitted by the defendant. On the contrary, one of these was that they should be told that to justify a verdict on the ground of an actionable fraud, it must be found " that the representations were made as alleged." In substance, this was the instruction given.

A more serious question is raised by the exception to that part of the charge in which it was stated that the action could

be maintained by proof of either set of representations,—those to the five individuals named, which it was alleged that the defendant made before the formation of the corporation, or those to the same men, after that event, in the capacity of its directors.

The plaintiff sues for an injury to its corporate interests. This could clearly be a result of false representations made to its managing agents. Could it also be due, and due alone, to false representations made to its promoters, in order to induce them to proceed to its organization, with a view of its making a contract with the party from whom the declarations came? The Superior Court was right in giving an affirmative answer to this question.

A private corporation is an association of individuals uniting for a common purpose. This purpose must be determined before the corporation comes into existence. The plaintiff was formed for the sole purpose of engaging in business under the defendant's patents and with the aid of his manufacturing plant and material. This was to be accomplished by a purchase from him. The purchaser was to be the new company, and the purchase price, a certain proportion of its shares and a sum in cash out of its treasury. The value of its shares would be measured by the overplus remaining after deducting that sum from the amount of the subscriptions to the capital stock, increased by whatever the patents and property might be worth that would be acquired under the contract.

A corporation comes into existence, as an artificial person, at a particular moment of time; but its rights and liabilities are largely dependent upon prior events. It springs out of a previous contract between its shareholders, which determines its objects and purposes. It takes advantage of subscriptions which they have made to its capital stock, in contemplation of its formation. It may also take advantage of offers which they have received from third parties to enter into contracts with it after it comes into being. Such offers, while made to individuals who have no authority to speak for any but themselves, are made to be communicated by

Scholfield Gear & Pulley Co. *v.* Scholfield.

them to the corporation, when it is capable of acting, and of course to be communicated with such statements of the attending circumstances as may be necessary to put it in possession of all facts material to aid it in deciding whether or not to close with the proposal.

If, therefore, the defendant fraudulently told the five individuals named in the complaint what is there alleged, in order to induce them to form the plaintiff corporation and procure the execution by it of the contract which was the subject of their negotiation with him; and if thereupon, in reliance on his statements, they did the very things which his representations were designed to promote or secure; the fact that the last step—the execution of the contract—was, in form, the act of a party with which he never had any direct communication, cannot relieve him from responsibility for all the damage naturally resulting from his fraud. So far as concerns the individuals with whom his negotiations were conducted, each of them has his several action for whatever injury he can show. So far as concerns the corporation, it has also its action for whatever injury it can show. It would have been an idle ceremony for these five men, after becoming the sole shareholders and directors of the plaintiff, to recount to themselves, as such, the representations made to them as individuals, a few weeks before, in contemplation of their occupying this very position. Whatever had been thus said to them to influence the action of the projected corporation, was in legal effect known to the corporation, as soon as it was formed. For many purposes there is a practical identity of a corporation with its members; and where all of these are also directors and the only directors, the identity, so far as questions of notice are concerned, is almost absolute. *Wood* v. *Wiley Construction Co.*, 56 Conn. 87, 96; *Woodbridge* v. *Pratt and Whitney Co.*, 69 id. 304, 330.

If, before administration is taken out upon an insolvent estate, a creditor is approached by one who urges him to apply for the appointment of administrator, and offers, should he receive it, to sell to the estate what he claims to be a mortgage lien upon land of the intestate, at a large dis-

count, as to the foundation of which he makes false representations, could not the creditor, should he, deceived by these statements, take out letters of administration and buy in the incumbrance, recover for the estate whatever loss it might suffer from the fraud? His action would be supported by proof of the statements made to him individually, because they were made to be acted on by him as administrator. So, whether the defendant made the false representations alleged to the plaintiff itself, or to others to induce them to organize the company and then to make the purchase in its behalf, is of no legal importance. In either event he is liable to it for the consequences to its interests which naturally flowed from his wrongful act.

The appellant complains of that part of the charge in which the jury were told that if fraudulent representations are made to one who acts in reliance upon them, to his damage, he can maintain an action without adducing express evidence of an intent to deceive. The ground of objection is that their attention was not called in this connection to the distinction between representations which are simply false, and those which are both false and fraudulent. The complaint alleged and the answer denied that the representations in question were of the latter character, and known to the defendant to be false when he made them. The jury had already been instructed that this was one of the matters in issue, and it was unnecessary to burden the charge, at this point, with any further reference to the facts pleaded. The term "fraudulent representations" imports of itself the commission of an active wrong in saying what was said; and that it was necessary either to bring a *scienter* home to the defendant, or else a reckless disregard of consequences, or culpable omission to investigate, was fully explained in instructions subsequently given.

The seventh reason of appeal is founded upon the observation of the court that, in view of the testimony of Smith, Lee, Collins, Shannon and Lucas, that the contract was made in reliance on the representations, "it is incumbent on the defendant to prove that the representations were not relied

upon. It is not enough for him to say that there were other representations or other circumstances which might have been the operative inducement. These representations claimed need not have been the sole inducement."

The objection taken is not to what was thus said as to the burden of proof; but to the remark that the plaintiff would not be barred from a recovery although there were other representations or circumstances which might have been the operative inducement to the contract. It was of no consequence what else "might have been" the operative inducement to it, provided the jury found that the representations declared on were in fact, in the language of the charge, the "very ground" of the transaction, and a proximate, immediate and material cause. *Sprague* v. *Taylor*, 58 Conn. 542, 551.

The jury were correctly told that, in determining whether the representations set up in the pleadings were true, or believed by the defendant to be true, on reasonable grounds, they had a right to consider other representations relative to his patents and business, made by him at about the same time, to the same parties or some of them, which were not so set up, but had appeared in evidence. These constituted part of the negotiations preceding the contract, and threw light on the real character of the representations which were the subject of the action. *Morehouse* v. *Northrop*, 33 Conn. 380.

There was no error in the observation to the jury that, in determining the question of *scienter*, they ought to have little difficulty, since all the representations alleged, so far as they might find them proved, "related to matters of fact of which the defendant had knowledge." For a vendor of a patented improvement in machinery to say to an intending purchaser that it had been largely sold, and successfully applied in many mills, where the improved machinery was in successful operation and was a practical success; that there was a large demand for the invention; and that he was making the article and found it a good and profitable business, is to do more than state an opinion. Whatever opinion he communicates is so blended with the statement of the facts upon which

it arises, that it becomes itself a statement of fact.   He could best tell whether his business was profitable, and his invention in demand; and these were points on which the execution of the contract turned.   Opinions might differ as to what measure of profit might make a business profitable, or how many orders might suffice to constitute a large demand, but the conclusion arrived at was one as to the existence of a state of facts, and certainly "related to matters of fact of which the defendant had knowledge."

His counsel had submitted various requests for instructions to the jury, and among others this: "Mere expressions of opinion or representations of the value of an article sold, are not actionable, if the subject of sale is open to the buyer's observation."   In the latter part of the charge, the court alluded to them, and said: " I will read you, with such modifications as I think proper, some of these requests."   That above quoted, among others, was then read.

It would have been better, had the court stated distinctly that the instruction thus requested and read, was given.   To read a request is one thing; to charge as requested, quite another.   Both parties, however, have argued the appeal upon the assumption that the instructions tendered by each, so far as they were read, were given, and it is therefore fair to presume that the jury so understood the charge.   Upon this assumption, which we feel bound to make, the reason of appeal now under consideration would fail, even if, otherwise, it had had merits.

The defendant requested the court to instruct the jury that "fraud consists of deception intentionally practiced to induce another to part with property or to surrender some legal right, and which accomplishes the end designed."

This instruction was given, except that the word "intentionally" was omitted.   The omission was proper under the circumstances of the case.   The action was for false representations made to defraud the plaintiff; and the defendant, in other requests, had admitted, and the jury accordingly were instructed, that it was enough to support it to show that they were made either knowingly or recklessly, with an in

tent to deceive, or under a belief of their truth, for which there was no reasonable ground, and with intent to induce the plaintiff to act upon them. Deception accomplished by false statements is not excused by a groundless belief in their truth on the part of the man who makes them; and amounts to legal fraud, if they are uttered to induce action on the part of another, from which loss naturally results. In matters susceptible of actual knowledge, if the party who has and is known to have the best means of knowledge, makes an affirmation contrary to the truth, in order to secure some benefit to himself, the law treats him as stating that he knows that whereof he affirms, and so as guilty of a fraud, although he spoke in ignorance of the facts; because he asserts that he knows what he does not know. *Chatham Furnace Co.* v. *Moffatt*, 147 Mass. 403, 18 Northeastern Rep. 168.

These considerations also justify the refusal to comply with the defendant's requests for instructions that "there can be no fraud without dishonest intention," and that "to constitute actionable fraud, there must be misrepresentation knowingly made, that is to say, a concurrence of fraudulent intent and false representations." The jury had already been told that if the defendant made representations which were false, believing them, on reasonable grounds, to be true, he was entitled to a verdict. Such a belief, based upon anything less, would be no justification for his assertions. Fraud in law is a broader term than fraud in fact.

The defendant requested an instruction that the plaintiff could not sue for representations made to itself, unless they were made after its organization certificate had been filed for record. Under our general laws for the formation of joint stock corporations, they are to hold their first meeting, at which they elect directors and may adopt by-laws, and must collect a considerable portion of the subscriptions to their capital, before such a certificate can be prepared. Until that paper is lodged (General Statutes, § 1947) in the proper recording offices, the corporation is forbidden to "commence business;" but it has a qualified existence from the date of its first meeting. *Canfield* v. *Gregory*, 66 Conn. 9, 22. Rep-

Scholfield Gear & Pulley Co. v. Scholfield.

resentations made to the plaintiff's directors, after its first meeting, which were acted upon after it was entitled to commence business, and were made to induce such action, were a sufficient ground of recovery.

The defendant's patents, covered by the contract of sale, embraced improvements in bobbin-gears, click-gears, pulleys, and split hub shaft gears. The court instructed the jury that it was no defense to the action, if all of these improvements, except that in the split hub shaft gear, were what they were represented to be. That was correct. The plaintiff was not debarred from a recovery for one fraudulent representation because it had alleged others which it failed to prove.

On the question of damages, however, we think the case was not properly put before the jury. The defendant had introduced evidence to show that the plaintiff had made and sold a considerable number of gears and pulleys, under the patent rights granted to it by him; and that its failure to manufacture the split hub gear successfully was due to defective workmanship and improper construction and application. The plaintiff's evidence was also that it had made some bobbin-gears, and click-gears, and that they worked well; and it had filed an "answer to counter-claim," admitting gross sales to the amount of $1,530, and that the defendant was entitled to an allowance on this account of one hundred and fifty-three dollars for royalties under the contract.

The court, in committing the cause to the jury, said that if the plaintiff had proved its case, it was entitled to recover for all the natural and reasonable consequences resulting from the defendant's representations, adding: "The plaintiff claims the five thousand dollars which it paid the defendant, and the rest of the capital of the company which it claims was wasted in this business as the direct result of these fraudulent representations. So that their claim for damages is five thousand dollars plus the rest of the capital which was lost in the business, as they say, or eight thousand dollars. Their claim is that the contract was of no value and the business a failure. From any amount you may find to be due you must deduct

the one hundred and fifty-three dollars which under the contract is due from the plaintiff to the defendant for royalties. This is all the defendant claims should be deducted, as I understand. If you find that there were no fraudulent representations, and nothing is due the plaintiff whatever, judgment will be for the defendant to recover one hundred and fifty-three dollars. It is admitted the plaintiff owes to the defendant this amount for royalties due under the contract." Attention had already been called to the defendant's claim that the plaintiff had not made the split hub gear in the proper way. Subsequently the court gave an instruction, requested by the plaintiff, to the effect that if they found in its favor, "in determining the loss and damage, the jury are to consider the five thousand dollars paid to the defendant under the contract, and any further sum which the plaintiff expended in proceeding under the contract, and which resulted in a loss as the direct result of the false representations which induced it to make the contract and proceed under it in the business."

A verdict was brought in after several hours' deliberation, awarding the plaintiff $2,500 and costs. The court directed the clerk to hand it to him, and it was not read, except by him. He then returned the jury to a second consideration, with these remarks : " In the verdict which you handed to the clerk, now in my hands, I find that you state that you have found the issue for the plaintiff ; so that the question is as to the amount to be recovered. Your having found the issue in favor of the plaintiff, means that you find the representations were made ; that they were made to induce the making of the contract, as alleged ; made falsely, and relied upon by the plaintiffs to their injury. The amount of money that was admittedly paid in under that contract was five thousand dollars. The claim was made before the jury that the recovery was for that and whatever the company lost or paid in under that contract (it paid the five thousand dollars) ; so that I must ask you to consider the matter further in regard to the question of damages." In twenty minutes the jury returned, but before being interrogated as to an

agreement, were further instructed that if the issue be found for the plaintiff, from any damages found in its favor there must be deducted the $153 due for royalties, and directed, in case this had not entered into their consideration, to retire again. They did retire, and, after twenty minutes more, came in with a verdict in the plaintiff's favor for $5,001 and costs.

In the nine requests for instructions submitted by the defendant, there was none referring to any profit which the plaintiff might have received by the contract. The law of which he asked the benefit was only that pertaining to the right of action. Nor was any claim made by his counsel in argument that any deduction should be made from such damages as the plaintiff might have proved, except that of the $153 due for royalties. Under these circumstances the court was naturally led to the conclusion as to this point stated in the original charge. But whether any further deduction had been formally claimed or not, the jury could not properly award more than compensatory damages. If they were of opinion that the plaintiff was chargeable with gains under the contract which ought to be credited against its losses, then, although the defendant's counsel had not alluded to the point, it was their right and duty to consider it in making up their verdict. That which they originally returned was rendered upon a charge to which there was no just exception. It represented their deliberate opinion, freely formed, as to the real extent of the losses which the plaintiff had sustained. In returning them to a second consideration, the court said, in effect, that he must ask them to consider the question of damages further, because it was admitted that $5,000 was paid under the contract. This was virtually telling them that having found the issues for the plaintiff, the admitted facts required them to give it at least $5,000, less the $153 due for royalties. Such was far from being the necessary conclusion from the evidence before them. They had a right to consider whether the plaintiff had used due care and skill in manufacture, due endeavors to market the goods, and due economy in the expenses of management

.The defendant had introduced evidence tending to show that it had not. If not, he was not bound to pay such losses as might thus have resulted from its own fault.

The Superior Court regarded the original verdict for $2,500 as one of compromise. Verdicts are often and properly the result of mutual concessions. Without something of this kind, twelve men can hardly be expected to come to a unanimous conclusion upon any computation of unliquidated damages in an action of tort. For the purpose of reaching an agreement, jurors, while they cannot rightly go contrary to their convictions, may and should, in forming those convictions, pay great regard to the opinions of their fellows. If the assessment of $2,500 in the plaintiff's favor was reached by a compromise, this of itself would be no reason for refusing to accept it. But that it was so reached is a mere surmise of the trial judge. It came from the jury, entitled to the benefit of the presumption that they had done their duty. We find nothing in the record to indicate that it did not represent an agreement fairly reached, on full consideration, by which in their judgment the cause was properly determined on the evidence before them.

On the other hand, the sudden change from $2,500 to $5,001 cannot be explained except upon the supposition that they felt bound to increase the damages to $5,000, at least, and this could only have been due to the remarks of the court, made on returning them to a second consideration. These remarks might naturally give them that impression, and a verdict rendered under such influences ought not to stand. That originally returned should have been accepted; and such course should now be taken, in redressing the error of the trial court, as may best tend to leave the cause in the condition which it would have occupied, had that error not intervened. This can only be accomplished by setting aside the judgment, unless the plaintiff remits the excess of the second over the first verdict.

There is error, and a new trial is ordered, unless the plaintiff enters a *remittitur* of $2,501 of the amount of the judgment; but if such *remittitur* be entered, the judgment shall

thereupon, as to the residue, stand affirmed; the costs of this court to be taxed, in either event, in favor of the appellant.

In this opinion the other judges concurred.