### In re HALSEY W. KELLEY & CO., Inc.

#### (District Court, D. Connecticut. May 29, 1914.)

#### No. 3180.

BANKRUPTCY (§ 314*)—CLAIMS—LIABILITY.

Where an accommodation indorser of a note for the accommodation of a corporation, which had filed a certificate of incorporation, signed by the indorser on the understanding that he was not to be a stockholder, believed in good faith that the corporation was legally organized and authorized to transact business, though as a fact the directors had failed to file a certificate of organization, as required by state statute, and the officers accepted and used the proceeds of the note in the corporation's business, the accommodation indorser, paying the note, was entitled to an allowance against the corporation, becoming a bankrupt, for the full amount thereof.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 469–473, 478, 483–487, 489, 490; Dec. Dig. § 314.*]

In Bankruptcy. In the matter of the bankruptcy of Halsey W. Kelley & Co., Incorporated. On review of the evidence, finding, and order of the referee on the claim of John B. Kennedy, certified to the judge on exceptions and petition of the trustee. Exceptions overruled, and allowance by the referee of the claim of John B. Kennedy confirmed.

Frederick H. Wiggin, of New Haven, Conn., for trustee.

Howard C. Webb, of New Haven, Conn., for John B. Kennedy.

THOMAS, District Judge. The evidence certified, in so far as is pertinent, would justify the following conclusions of fact:

1. On December 14, 1911, John B. Kennedy, David R. Alling, and Halsey W. Kelley subscribed a certificate of incorporation of the Halsey W. Kelley & Co., Inc., which certificate was approved by the Secretary of State of Connecticut, on December 16, 1911, and thereby the corporation's existence was begun.

2. In said certificate it was stated that the corporation was to be located in New Haven; that its capital was to be $20,000, divided into 200 shares of the par value of $100 each; and that the amount of cash with which the corporation was to commence business was $20,000.

3. John B. Kennedy signed said certificate at the personal request of Halsey W. Kelley, and with the understanding and agreement that he was not to be a stockholder or have any part in the business of the corporation.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. The subscribers to the capital stock of the corporation, and the number of shares and value subscribed by each, were as follows, viz.: D. W. Murdock, 10 shares, $1,000. Mr. Mayo, 10 shares, $1,000. Mrs. Kelley, wife of Halsey W. Kelley, 10 shares, $1,000. Halsey Johnson Kelley, son of Halsey W. Kelley, 5 shares, $500. Halsey W. Kelley, 50 shares, $5,000. Halsey W. Kelley, 10 shares, $1,000. There were no other signed subscribers for the stock.

5. The following statement shows the only stock subscribed and paid for and the method of payment: 10 shares by Mayo, who paid therefor $1,000 in cash; 10 shares by Murdock, the amount of which, $1,000, was deducted from a bill owed to him on open account, and for fixtures furnished for the store of the concern; 10 shares by Halsey W. Kelley, who paid for the same with $1,000 borrowed by him; 10 shares by Mrs. Kelley, for which she paid $1,000, of which $700 was realized on a policy of insurance and $300 which Kelley himself put in at the start of the business, but the dates of these payments or credits do not appear, and no certificates of stock were ever issued to subscribers therefor.

6. An organization was attempted by said subscribers by the election of Halsey W. Kelley, his wife and son as directors, and they appointed Halsey W. Kelley as president and treasurer. Said Kelley thereafter acted as president and treasurer of the corporation, no attempt being made to elect directors or appoint officers.

7. Notwithstanding the attempted organization of the corporation as above stated, the corporation never executed or filed, as required by law, a certificate of its organization.

8. On December 20, 1911, said Halsey W. Kelley executed a note as follows:

"$5,000.                              New Haven, Conn., December 20, 1911.

"Four months after date I promise to pay to the order of John B. Kennedy, five thousand dollars ($5,000) at the People's Bank and Trust Company. Value received.

"No. ———. Due (in pencil) April 20, $84.72.          Halsey W. Kelley."

Kennedy indorsed said note, and it was further indorsed "Halsey W. Kelley & Co., Incorporated, Halsey W. Kelley, President," and was on said December 20, 1911, discounted by the People's Bank & Trust Company, and the Halsey W. Kelley & Co., Inc., was credited with the amount of said note, less discount, viz., $4,915.28, which sum constituted the capital with which said company commenced business.

9. There was no vote of the directors of said Halsey W. Kelley & Co., Inc., authorizing the indorsement of the corporation on said note, and said indorsement was placed thereon by said Halsey W. Kelley.

10. On April 22, 1912, said note was renewed by the substitution of a new note, similar in tenor, and said note was stamped, "Paid, April 22, 1912, People's Bank and Trust Co., New Haven, Connecticut" as appears on the back of said note (Exhibit 2).

11. Said renewal note was similarly renewed, and the loan was thus kept outstanding by several similar renewals until August, 1913, when the full amount thereof, together with protest fees, was paid by said

John B. Kennedy to the People's Bank & Trust Company; the maker, said Halsey W. Kelley or the said corporation, or any other person for him or it, never having paid the same.

12. Immediately before and at the time of the incorporation of said company, and until its adjudication as a bankrupt in this court on July 16, 1913, upon a voluntary petition in bankruptcy filed by the corporation, said Halsey W. Kelley had been its leading spirit, active officer, and director, and had charge of the store wherein the company carried on a general hardware and paint business in the city of New Haven, under the name and style of Halsey W. Kelley & Co., Inc.

13. When said Kennedy indorsed said note, he supposed that Halsey W. Kelley & Co., Inc., had been legally organized as a corporation, and could lawfully transact business as such, and he indorsed it for the purpose of loaning his credit to the concern, so that it would, by the discounting of said note, be enabled to secure money whereby to purchase material and stock for the business, and with the direct understanding and agreement that the note which he indorsed was to be used for no other purpose, and that the corporation would indorse said note and be responsible for its payment, and that the note would be ultimately paid by the corporation from the profits of its business.

14. Said Kennedy would not have indorsed said note were it not for his friendship for said Kelley, and his desire to assist him in getting the business of the corporation started.

15. The officers and agents of said corporation accepted and used the proceeds of said note in its business, with the full understanding that it was not to be used for the payment of any part of the capital stock of the corporation, and that it was an obligation which it was the duty of the corporation to eventually take care of.

16. Kennedy acted in good faith, and because he placed reliance upon the representations and the agreement and understanding that he had with Kelley to the effect that the company would take care of said note, and that he would not be obliged to make payment of any part thereof.

17. Had the corporation been successful, the amount represented by the note would have eventually been paid out of the funds of the corporation, and Kennedy would have had no claim upon any part of its capital stock.

18. Kelley, in the organization of his corporation, employed no lawyer, because he thought thereby to save an expense of $100, and was himself ignorant of the strict requirements of the corporation law of Connecticut concerning the necessity of filing a certificate of organization before a corporation can legally commence business. He seems to have conceived the notion that the filing of said certificate would not be required until he had obtained the full sum of $20,000, which he had expected to be able to raise by the sale of shares of stock and otherwise, and it was for this reason that the corporation essayed to commence business without such certificate being executed by its directors, sworn to and filed with the Secretary of State.

19. Although Kelley never considered the indorsement by Kennedy

on said note as a loan to him personally, he nevertheless subscribed for 50 shares of the capital stock of the bankrupt corporation amounting to $5,000 and credited himself as having paid therefor.

20. Though Kelley had so subscribed for 50 shares of the capital stock of the bankrupt corporation and had credited himself with payment thereof on the strength of said Kennedy's indorsement of said note, yet Kennedy had no knowledge of this fact at any time until after bankruptcy proceedings had been commenced.

21. Said Halsey W. Kelley is insolvent, and it is impossible for said Kennedy to collect any portion of the note from him.

The evidence which has been certified, in so far as is pertinent to the matter, would lead to the conclusions of fact above set forth, and the law is such as to charge the corporation with the money obtained on said note, through the efforts of said Kelley, even though there was a failure on the part of the directors to execute, swear to and file with the Secretary of State a certificate of organization in behalf of that corporation. Scholfield, Gear & Pulley Co. v. Scholfield, 71 Conn. 1, 14, 40 Atl. 1046; Canfield v. Gregory, 66 Conn. 9, 22, 33 Atl. 536; Barrows v. Natchaug Silk Co., 72 Conn. 658, 45 Atl. 951; Lamkin v. Baldwin & Lamkin Mfg. Co., 72 Conn. 57, 43 Atl. 593, 1042, 44 L. R. A. 786.

It would appear that the trustee's exceptions to the finding and report of the referee should be overruled, and that the allowance by the referee of the claim of said John B. Kennedy for the full amount mentioned in the certificate should be confirmed.

The exceptions to the certificate, finding and order of the referee are overruled, and the allowance by the referee of the claim of said John B. Kennedy is hereby approved and confirmed.