LOUIS J. MEADER vs. TROUT BROOK ICE AND FEED COMPANY.

First Judicial District, Hartford, May Term, 1921.

WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

Evidence before the court in aid of the plaintiff's appeal cannot be used in aid of the defendant's motion to correct the finding, where the defendant has not obtained a certification of the evidence for that purpose.

The term "fraudulent representations" imports of itself the commission of an active wrong in saying what was said, and it is necessary to bring home to the person making the representations either a *scienter*, or else a reckless disregard of consequences, or culpable omission to investigate.

In an action for damages for false representations inducing the plaintiff to pay money to the defendant, it appeared that the defendant bought of the plaintiff and paid for a car of alfalfa feed, that the car was placed by the railroad on the public delivery siding in the defendant's city and the defendant notified of the arrival, that on the day following its arrival a foreman of the defendant opened it and took therefrom eighty of the six hundred bags of feed, that there was then no indication of smoking of or fire in the grain, that two days later the grain was discovered to be on fire, that thereafter the officers of the defendant represented to the plaintiff that the feed was on fire before its delivery to them, and that the plaintiff, relying on such representations, paid to the defendant the amount of the damage to the grain, intending to recover it from the railroad. The court found that these representations were false, were made to induce the plaintiff to make the payment in question, and were either known to the defendant to be false, or were made recklessly and without investigation, and

Meader *v.* Trout Brook Ice & Feed Co.

judgment was given for the plaintiff to recover an amount equal to that paid the defendant. *Held* that as the subordinate facts found supported the court's conclusions, there was no error in the judgment.

Violation of a legal right of the plaintiff imports damage, even though no actual loss has come to him, or though in fact the defendant's breach of duty has proved a benefit to the plaintiff.

While legal injury must accompany actionable fraud, the injury need not have a compensable market value; the correct principle being that the person injured is entitled to be placed in the situation he would have occupied had there been no fraud, and his right of recovery must be determined on this basis.

The defendant contended that even though a case of fraudulent representations was made out, there was only *damnum absque injuria,* as it was entitled to damages for breach of an implied warranty of fitness, in view of the court's finding that the feed contained excessive moisture and was therefore subject to combustion and unfit for transportation, and a judgment for it in the present action would thus avoid circuity of action. *Held* that this contention was properly not sustained, since the defendant was not entitled to such recovery if it had had the feed in its possession long enough to have unloaded it by the exercise of reasonable diligence, and no case for such recovery was made upon the pleadings and proof presented; and, moreover, the defendant could not excuse liability for its fraud by showing that the party defrauded owed it the same amount obtained by its fraud.

Argued May 3d—decided July 22d, 1921.

ACTION to recover money paid by the plaintiff to the defendant because of its alleged false representations, brought to and tried by the Court of Common Pleas in Hartford County, *Dickenson, J.;* facts found and judgment rendered for the plaintiff for $607, and appeal by the defendant. *No error.*

The plaintiff also appealed from the refusal of the trial judge to amend or correct the finding. *No error.*

The trial court found the following facts: February 1st, 1918, the plaintiff sold to the defendant thirty tons of alfalfa feed f. o. b. New York, payable sight draft attached to bill of lading, and shipped the same by rail to the defendant. The car of feed arrived in Hartford

on May 21st, 1918, was placed by the railroad on a public delivery siding on May 24th, and the defendant duly notified of its arrival and placement on Saturday, May 25th. Defendant paid the draft on May 22d, and on May 25th obtained the bill of lading from the bank and surrendered it to the railroad company. In the afternoon of May 25th a foreman of the defendant opened this car and took eighty of the six hundred bags of feed in the car from it, being those located close to the car door, and then locked the door. During the unloading of the eighty bags no indication of smoking of or fire in the grain was observable; nor at this time had the grain been on fire, nor had there been sign of any fire in it; and when the foreman left the car its contents had every appearance of being in good condition. On the Monday following, at 3:25 A. M. of May 27th, when the foreman next saw this car, he discovered that the feed was on fire and was damaged by the fire in value the sum of $534.40.

When alfalfa feed contains more than sixteen per cent of moisture, it is combustible when left in a confined area without sufficient air reaching it, and feed containing more than sixteen per cent of moisture is defective and unfit for transportation or for consumption.

There was no cause for this fire other than the combustibility of the feed. It was in fact caused by combustion of the feed due to the presence of moisture in the feed in excess of sixteen per cent. Opening the door and taking out the eighty bags of feed would not allow sufficient air to reach the bags, which were packed solidly, so as to check the combustion of the feed if it had already started to heat. When in fact the combustion began does not appear. The defendant claimed to the railroad immediately after the fire that the damage by fire occurred before the delivery of the car.

On June 19th, for the first time, the defendant notified the plaintiff that this car of feed heated and partially burned, and if the railroad did not pay the defendant for this damage they would expect plaintiff to reimburse it.   The plaintiff replied on June 21st that if the feed was damaged on arrival the railroad should pay and offered to assist in the collection.

On June 28th the plaintiff wrote the defendant that the car appears to have been in trouble on arrival in Hartford, and, if the defendant desired, plaintiff would file a claim with the railroad on defendant's account upon its forwarding freight claim and statement of facts. Plaintiff repeated this offer in letter of July 10th, and the defendant wrote on July 12th that upon receipt of a check for the damage to the feed they would forward freight bill and affidavits.

On July 30th, and once before this date, the defendant's officers had informed the plaintiff's agent that when the defendant went to unload the feed it was on fire.   On July 30th, upon the defendant's promise to furnish freight bill and affidavits, the plaintiff gave the defendant a check for $560.21, which included the damage by fire plus the freight bill.

The following paragraphs of the draft-finding were marked "proven ":—

"23.   The representations made by the defendant to the plaintiff, to wit: that said fire occurred before the delivery of the same to the defendant; that said fire was discovered when the defendant went to unload the car; and that the car had burned on the morning before the defendant had unloaded it—were false and were either known by the defendant to be false or were made by it recklessly without caring whether the same were true or not, and without an investigation as to whether or not said statements were true.   The defendant could easily have ascertained whether said fire

occurred while said car was in the possession of the railroad company, and could easily have ascertained whether any of said bags of feed had been removed prior to the date of said fire, but the defendant took no steps to find out the truth or falsity of said representations.

"24. Said representations were made for the purpose of inducing the plaintiff to pay the defendant said sum of $534.40.

"25. The plaintiff believed said representations of the defendant to be true and relied upon them, and had the plaintiff known that said representations were false the plaintiff would not have paid said sum or any other sum to the defendant.

"26. The defendant knew that the plaintiff relied upon said representations and knew that the plaintiff acted upon said representations."

The trial court also found these facts:—

"20. Sometime after the plaintiff had paid said money to the defendant, the plaintiff discovered that at the time of the occurrence of said fire, said car had been delivered to the defendant and was in its possession, and that prior to said fire eighty bags of said feed had been removed from the car by the defendant's foreman.

"21. Thereupon the plaintiff requested that the defendant return the money so paid to it, as the money was paid upon representations made by the defendant which were false, and had the plaintiff known that said representations were not true he would not have paid said money."

The following conclusions were reached by the trial court: " (27) The car had been delivered to the defendant and was in its possession at the time of the fire. (28) The representations of the defendant were that the car had not been received by it at that time. (29)

The moneys paid by the plaintiff to the defendant were paid as a result of these representations, they were false, they were known to be false by the defendant, they were made for the purpose of inducing the plaintiff to pay said money, and did in fact induce the plaintiff to pay said money to his damage."

*Joseph F. Berry* and *Alexander Arnott,* for the appellant (defendant).

*Henry J. Marks,* for the appellee (plaintiff).

WHEELER, C. J. The plaintiff's appeal is confined to an attempt to correct three paragraphs of the finding. We have examined the evidence as certified, and think this appeal is without merit.

The defendant rests its argument upon its appeal, upon three grounds. Before taking these up seriatim, it should be pointed out that the defendant has not had the evidence certified in aid of its claim to correct the finding. The evidence is before the court in aid of the plaintiff's appeal and can be used for no other purpose.

*First.* The defendant claims that the subordinate facts found do not support the conclusions reached by the court, namely, that these representations, made by the defendant to the plaintiff, were false and known to be false by the defendant, and were relied upon by the plaintiff to his damage. All of these so-called conclusions are definitely found facts, as will appear by reference to paragraphs 23, 24, 25 and 26 of the draft-finding, which are marked "proven," as well as in the finding in paragraphs 23, 24 and 25.

These definite findings cannot be ignored or disposed of as conclusions improperly drawn from the subordinate facts; they are the subordinate facts.

These definite findings cannot be disregarded without

violating our rules and established practice; and other parts of the finding and draft-finding marked "proven" are in harmony with these statements and furnish the fullest support for them, if they could in any sense be held to be mere conclusions.

*Second.* It is found that the foreman of the defendant opened the car and took from it eighty bags of feed on May 25th, and did not at that time observe any signs of fire, and it was not until May 27th that he first found the feed on fire.

Paragraph 15 of the draft-finding, marked "proven," is that Mr. Arnold (the president of defendant) informed Messrs. Wallace (agent of plaintiff) and Lyons (agent of defendant) that when the defendant went to unload the car of feed it was discovered "on fire."

Paragraph 16 of the draft-finding, marked "proven," is that before July 30th, 1918, Wallace and Lyons had a talk with Mr. Breed, secretary of defendant, and that "at that time Breed informed Messrs. Wallace and Lyons that on the morning that the defendant went down to unload the car it was discovered on fire; that the car had burned on the morning before they had unloaded it."

These findings fully support the trial court's finding that these representations were false. The fact that defendant, at about this time, claimed that this feed was unfit for transportation and subject to the vice of combustion, does not tend to prove that these representations were not made, nor that they were not false, nor that they were not relied upon and constituted the inducement to the plaintiff to pay over the moneys representing the damage done by the fire. We cannot say as matter of law that these statements are so inconsistent that we must wholly disregard the trial court's finding that the plaintiff in fact relied upon these representations. It must be conceded that these find-

ings (paragraphs 24, 25 and 26 of the draft-finding), make out the case of fraudulent representations as set up in the complaint, and, as we have no means of testing whether they accord with the evidence or not, we must accept them. These statements also appear in the finding. That part of the defendant's claim that the subordinate facts do not support the statement that these representations were "known to be false by the defendant," admits of more controversy than the rest of the claim. But as to this we think the subordinate facts do substantiate this finding. Aside from this, the finding that the representations were known to be false to the defendant was a finding of fact which we cannot disturb.

The foreman, who was the sole representative of the defendant in unloading this car, knew the fact that there was no sign of fire when he unloaded the eighty bags, and his knowledge was the knowledge of the defendant, for he was its agent in charge of the matter of the unloading of the car. When the defendant, through its president and secretary, made other representations as to the facts contrary to the facts which its foreman knew, it must be held to have represented something as true which was false and which it knew to be false, for at that time the knowledge of the foreman was its knowledge. That the president and secretary may have believed what they represented, does not make it true that the defendant did not then know that these representations were false. It knew the facts known to its foreman in the course of his employment, and any representations relating to its business made by its officers which were contrary to the facts known to it, constituted a false statement known to it to be false. But the finding in paragraph 23 as quoted, that these representations were made recklessly without caring whether the same were true or not, is conclusive. The same legal conclusion of liability will follow the making

of reckless statements as follows the making of false statements knowingly.

This finding brings the case squarely under the doctrine of *Scholfield Gear & Pulley Co.* v. *Scholfield,* 71 Conn. 1, 16, 40 Atl. 1046: "The term 'fraudulent representations' imports of itself the commission of an active wrong in saying what was said; and that it was necessary either to bring a *scienter* home to the defendant, or else a reckless disregard of consequences, or culpable omission to investigate."

The defendant does not contest this legal proposition. Nor does it claim that the facts found do not make out a case of fraudulent representations. Rather it seeks to avoid the legal conclusion from the findings made, in two ways: (1) that the fact of the making of the representations, their falsity, the knowledge by the defendant of their falsity, and the reliance by the plaintiff upon them, were all mere conclusions unsupported by the subordinate facts; and we have shown that these statements were facts found and not conclusions, and were in fact fully supported by the other facts found; and (2) that there is a variance between the complaint as based on fraud and the case as developed by the subordinate facts of the finding.

The defendant does not argue this point. Obviously from its standpoint the question of variance depends upon the establishment of its first point, that these several statements in respect to the representations were mere conclusions unsupported by the subordinate facts.

*Third.* The defendant's third point is in reality the one upon which it relies, and that is, that the injury, even though a case of fraudulent representations is made out, is *damnum absque injuria.* Reference to the brief of defendant shows that the body of the argument is devoted to the proposition that the plaintiff was liable by reason of his breach of the implied warranty of fitness

or condition of this feed, and hence has suffered no damage; that is to say, that since the feed was subject to combustion and unfit for transportation, the defendant might have offset the damage from combustion against the price in an action for the latter, and might, if the plaintiff prevails in this case, sue to recover the amount of damage from the fire; hence, to avoid circuity of action, the judgment should be rendered in favor of the defendant.

But it does not follow that the defendant could recover if it had pleaded in due course the facts as they have been found by the court. Since the feed was liable to combustion in the restricted area of the car, it was immaterial whether it occurred before or after delivery, unless the defendant had had a reasonable time in which to remove the feed from the car and had failed to avail itself of this opportunity. In that case the issue would have come to the point of determining whether the defendant had had the feed in its possession a sufficient time in which to have unloaded it by the exercise of reasonable diligence. The finding in this case does not answer this issue.

The case upon the pleadings and the proof is not that case. It is an action to secure, as damages, moneys in amount equal to the moneys paid the defendant in consequence of the plaintiff's reliance upon certain representations which were false and made by the defendant to the plaintiff without having reasonable ground for making them, for the purpose of inducing him to pay to it such sum. The proof of these fraudulent representations imported the violation of a legal right, and that violation imported damage, and this is so even though no actual loss has come to the plaintiff, or if in fact defendant's breach of duty has proved a benefit to the plaintiff. *Watson* v. *New Milford Water Co.*, 71 Conn. 442, 451, 42 Atl. 265; *Excelsior Needle Co.* v. *Smith*, 61 Conn. 56, 65, 23 Atl. 693.

In *Sprague* v. *Taylor,* 58 Conn. 542, 20 Atl. 612, a wife sought to recover money paid, through the inducement of fraudulent representations, to satisfy a claim outstanding against her husband. The defendant offered to prove that the plaintiffs sustained no damage; that they saved forty per cent of the debt due on the deficiency judgment, by compromising as they did. The court excluded the offer; and we sustained the ruling, and held that the evidence was not admissible to show that she was not damaged by the fraud. A defendant cannot say: " I, by my fraudulent representations, induced you to pay over your money, but since you in fact owed me this sum you cannot recover for my fraud." That would enable the defendant to excuse his conceded liability by pleading his own fraud. *Aborn* v. *Rathbone,* 54 Conn. 444, 446, 8 Atl. 677; *New Haven Savings Bank* v. *Atwater,* 51 Conn. 429, 431.

Though the subject-matter of, for example, a sale is worth as much or more than the contract price, if the sale be induced by fraudulent representations, an action of deceit will lie. *Drake* v. *Holbrook,* 25 Ky. Law Rep. 1489, 78 S. W. 158, 159. While legal injury must accompany an actionable fraud, the injury need not have a compensable market value. The invasion of a right presumes damage. The true rule is well stated in 20 Cyc. 42: "The correct principle is that plaintiff is entitled to be placed in the situation he would have occupied had there been no fraud, and that his right of recovery must be determined on this basis." *King* v. *White,* 119 Ala. 429, 432, 24 So. 710; *Hicks* v. *Deemer,* 187 Ill. 164, 170, 58 N. E. 252; *Bergeron* v. *Miles,* 88 Wis. 397, 398, 60 N. W. 783.

There is no error.

In this opinion the other judges concurred.