30   559
59   197
30   559
62   185

THE QUINEBAUG BANK *vs.* JOHN BREWSTER, TRUSTEE.

In determining whether a conveyance was made with a view to insolvency, the ordinary rules of evidence are to be applied, and the parties are not to be charged with knowledge which by the fair and legal application of those rules they can not be found to have possessed.

The court below found that a certain mortgage was not given with a view to insolvency if the evidence was to be weighed by the ordinary rules of evidence, without giving to any of it an additional legal or constructive effect; but that, if the parties to the mortgage were to be held chargeable with the knowledge of facts of which they had such notice as would lead a prudent man in a matter which concerned his pecuniary interest to make inquiry, and were to be pre-

sumed to have intended the probable consequences of giving such mortgage, in view of the facts which might have been ascertained by such inquiry, then the mortgage was found to have been given in view of insolvency.  Held that the latter rule could not be applied, and that the mortgage was to be regarded as not given in view of insolvency.

A .question of intent is always a question of fact.  The rule that a man is to be taken to have intended the probable results of his own acts, is at most a rule of evidence, to be applied by the triers in inquiring into the intent, but is never a rule of law.

BILL for a foreclosure ; reserved by the superior court, on a special finding of the facts, for the advice of this court. The case is sufficiently stated in the opinion.

*Wait* and *Halsey,* for the petitioners.

*Hovey* and *Child,* for the respondents.

SANFORD, J.  This case comes up for our advice upon the report of the judge who tried it in the superior court.

The petitioners seek to foreclose a mortgage given by Peleg Rose, to secure the payment of his note for six thousand dollars. Soon after the mortgage was given Rose went into insolvency, and the respondent is the trustee of his insolvent estate.  The answer alleges that the mortgage was made by the mortgagor in failing circumstances, with a view to insolvency, and for the purpose of preferring the bank to other creditors, and that it is by the statutes for the relief of insolvent debtors and the more equal distribution of their effects among their creditors, fraudulent and void.  The finding of the court details certain specific facts proved upon the trial in relation to the origin of the note and mortgage, the circumstances under which they were made, the pecuniary condition of the mortgagor at the time of giving them, and his conduct afterwards, and concludes that " by weighing the testimony by the ordinary rules of evidence, without giving to any of it any additional legal or constructive force or effect, the court finds that the mortgage was given by the mortgagor when in failing circumstances, but not in view of insolvency, nor with an intent to prefer any creditor or creditors ;" but " by holding the parties to the mortgage

chargeable with the knowledge of facts of which they had such notice as would lead a prudent man in a matter which concerned his pecuniary interests to investigate and ascertain, and by applying the presumption that they intended the probable consequences of giving such mortgage in view of the facts which might have been so ascertained, the court finds that the mortgage was given by the mortgagor in failing circumstances, with a view to insolvency, and with intent to prefer some of his creditors." And the great question is, which of the above findings ought to stand as the finding of the court and the foundation of its decree. If the first, then the mortgage not being made with a view to insolvency nor with intent to prefer creditors is valid, but if the second, it must be adjudged fraudulent and void.

The statute referred to, (Rev. Stat., Comp. 1854, p. 512, sec. 1,) provides that all conveyances of any lands and other property, made directly or indirectly by any person *in failing circumstances with a view to insolvency*, shall, as against the creditors of the party making such conveyance, be deemed and adjudged fraudulent and utterly void, unless the same shall be made in writing for the benefit of all the creditors.

By the very terms of the statute then it is not enough to invalidate the mortgage that it was made by the mortgagor in failing circumstances; it must also have been made with a view to insolvency; and that it was not so made is in express terms conclusively found by the superior court, unless the ordinary rules of evidence are to be rejected and the parties charged with the knowledge of facts of which they had such notice as would lead a prudent man in a matter which concerned his pecuniary interests to investigate and ascertain, and unless they must be *presumed to have intended* the probable consequences of giving the mortgage in view of the facts *which would have been so ascertained.*

We find no satisfactory reason for rejecting the ordinary rules of evidence, and no justification for charging the parties with knowledge which, by the fair and legal application of those rules, it can not be found that they possessed, nor with intentions which it is so found they never entertained. The

ordinary rules of evidence are founded upon the soundest principles of reason and philosophy, are adapted to the investigation of every question of fact, and to no one more appropriately than the ascertainment of the motive by which a party was induced to do a particular act, or his purpose and intent in doing it. It is almost too obvious to justify either illustration or remark, that no conveyance can have been made " with a view to insolvency " unless the grantor at the time of making it contemplated such insolvency as impending over him, and made the conveyance in reference to that event and in preparation for it. And it is equally obvious that he could not have contemplated insolvency as impending, unless he actually knew or believed that his property was insufficient for the payment of his debts. Facts which by inquiry he might have ascertained, if in truth he did not know them, or believe in their existence, could have had no influence upon his purposes or his actions. And notice enough of his actual condition to put him upon inquiry, if that inquiry had not been made, could have had no influence upon his actions. Legal fictions and equitable presumptions have no effect upon the actual conduct of men. An omission to inquire may be evidence of negligence, but negligence is not fraud, either in law or in fact, and neither proves nor indicates a positive intention to commit a fraud, whatever penal consequences the law-giver in his wisdom may attach to such negligence. And the single fact found, expressly and affirmatively, by the superior court, that Mr. Rose supposed himself worth enough to pay all his debts, would seem to be a sufficient answer to the claim that he then contemplated insolvency and made the mortgage with a view to it.

In the case of *Utley* v. *Smith*, 24 Conn., 290, Judge Ellsworth, in giving the opinion of the court, says : " Actual insolvency is but a circumstance to be taken into the account in weighing motives, and although it [the conveyance in question] may work a kind of preference, yet if this was not intended by the parties, and the conveyance was *bona fide* and in the usual course of business, the conveyance is not contrary to the language or spirit of the statute." No claim has

been made that the mortgage in the case before us was not made *bona fide*, or not in the usual course of business.

In order to bring this mortgage within the operation of the statute, it must be shown that the mortgagor intended by such mortgage to withdraw the mortgaged property from the common fund to which all his creditors were entitled, and thus to favor one at the expense of the rest of them. But a man intends that consequence only which he contemplates, and which he expects to result from his acts. " It is therefore a question of fact for the jury whether the agent, in attempting his primary object, did not contemplatè and expect the collateral mischief." 2 Stark. Ev., 742. Is it to be supposed that when, as the superior court finds, Mr. Rose supposed he was worth enough to pay all his debts, was prosecuting his business in his accustomed way, and was getting good pay for what he did, and, although embarrassed for want of cash funds, hoped to procure assistance, and had the assurance of the bank that they would continue to discount his good business paper, he expected that by giving this mortgage his ultimate failure would be accelerated and assured ? If he intended by giving this mortgage to bring on open, avowed insolvency, why did he continue his business ? Why did he not make a voluntary assignment ? Why did he entertain the hope that he should be able to procure assistance, and why did he obtain from the bank an assurance that they would continue to discount even his good business paper ?

The intention of a party is a fact to be proved as all other facts are proved, not indeed necessarily by direct evidence, but either by direct evidence or by the proof of other facts indicative of such intention, and from which facts its actual existence and operation may be inferred. The law makes no conclusive presumption in regard to it. Indeed the law never conclusively presumes that a person intended to violate the law or commit a fraud. The act done and the circumstances attending its commission, may indicate more or less clearly the intention of the party doing it, and authorize an inference of more or less weight in regard to such intention. " The intent," says Hubbard, J., in *Jones* v. *Howland*, 8 Met., 386,

" is to be proved as a fact, either by direct evidence or as the necessary and certain consequence of other facts clearly proved." So Mr. Justice Comstock, in *Curtiss* v. *Leavitt*, 15 N. York, 1, says, that " the rule that a man is to be taken to have intended the probable result of his own acts, is often a very useful rule of evidence in arriving at a conclusion upon a question of motive or intention, but it is not a rule of law. If a given result must by plain and absolute necessity follow from a particular action, or if it be so likely to follow that no two minds of equal intelligence could differ in conclusion, viewing the subject from the same point as the actor himself, then there would be no injustice in holding that he intended such result. Still the question is one of fact, what was the intent? What it was is by no means uniformly proved by the result."

Now had it been shown that Mr. Rose actually knew or supposed himself unable to pay all his debts, and consequently that actual insolvency impended over him, that fact would have authorized an inference, to be taken into the account and weighed by the triers, in determining the question whether he made the mortgage with an intention to evade the operation of the statute and prefer the mortgagee or some other creditor, or not. Even then however, no conclusive inference or presumption of such intention could have been made. It would still have been a question of fact, to be determined upon all of the evidence. But no foundation for such presumption of intention was laid by proving Rose's knowledge or belief of his inability to pay all his debts. On the contrary the absence of such knowedge and belief was proved and found by the court, and thus the presumption was repelled. But in order to attain to the conclusion of the second finding, the mortgagor's knowledge of his real condition was *imputed* to him, not proved, and imputed too not only without evidence but in the face of it.

Upon the whole we think the first mentioned finding, to wit, that " the mortgage was given by the mortgagor when in failing circumstances, but not in view of insolvency nor with an intent to prefer any creditor or creditors," the one that ought to stand as the finding of the court, that the mortgage

ought to be deemed a valid security, and that the petitioners are entitled to the decree of foreclosure for which they pray. And so we advise the superior court.

In this opinion the other judges concurred.

# SUPREME COURT OF ERRORS.

## MIDDLESEX COUNTY, MARCH TERM, 1862.

### Present,

HINMAN, C. J., SANFORD AND SEYMOUR,* Js.

30 565
72 66