EDWARD GANNON *vs.* FRANCIS P. SISK, ADMINISTRATOR,
ET ALS.

SADIE GANNON *vs.* FRANCIS P. SISK, ADMINISTRATOR
ET ALS

ELSIE REDMOND *vs.* FRANCIS P. SISK, ADMINISTRATOR
ET ALS.

Third Judicial District, Bridgeport, October Term, 1920.
WHEELER, C. J., BEACH, GAGER, CASE and CURTIS, Js.

Evidence that the defendants' servant was, or was reputed to be, a careful and competent driver, is inadmissible to disprove his negligence on a particular occasion.

The admission of such objectionable evidence is not cured or rendered harmless by an instruction in the charge to the effect that if the jury found the driver was guilty of actionable negligence on the occasion in question, it was of no consequence that he was, or had the reputation of being, in general a careful and prudent driver; for the jury had no right to use the evidence erroneously admitted

Gannon *v.* Sisk.

in coming to their conclusion as to the driver's negligence,—a use which the instruction given did not prohibit or exclude.

The plaintiffs applied to the defendants S, a partnership, for a carriage in which to attend a funeral. The defendants S, upon their own responsibility, ordered the carriage from the defendants A, another partnership. The plaintiffs later paid the defendants S for the carriage. Its driver was B, an employee of the defendants A. As the plaintiffs entered the carriage at the cemetery, B slammed the door so violently that the horses were frightened and ran away, resulting in bodily injury to the plaintiffs, for which they sought to recover of both partnerships. *Held:*—

1. That it was the duty of the defendants A to furnish a safe coach, safe horses, and a competent driver to the defendants S; but even though they had fulfilled this duty, they were not relieved of liability to the plaintiffs, if at the time of B's negligence, he was acting as their servant.

2. That an instruction that if the plaintiffs ratified the act of the defendants S in ordering the carriage from the defendants A, then the defendants S were not liable, was erroneous; since such ratification or approval would not affect the liability of the defendants S, especially if, at the time of the accident, the driver, B, was under their control.

3. That an instruction that if the defendants A were not a partnership, then such of them as participated in furnishing the team and the driver would be personally liable, was correct.

4. That the trial court correctly instructed the jury that if at the time of the accident the exclusive control and direction of the carriage and driver were with the defendants A, then they, some or all, would be solely liable; that if such direction and control were in part with the defendants A and in part with the defendants S, then both would be liable; and that if such direction and control were exclusively with the defendants S, then they alone would be liable.

The trial court's own conception of a case need not be supplemented by reading into the charge the requests of the parties. But if that is done, the requests should, if possible, be inserted in the charge in connection with the subject to which they relate or form a part, or, if that is impossible, they should be placed at the end rather than at the beginning of the charge.

Argued October 28th, 1920—decided January 26th, 1921.

ACTIONS to recover damages for personal injuries alleged to have been caused by the negligence of the defendants, brought to the Superior Court in New Haven County and tried together to the jury before

*Haines, J.;* verdict and judgment for the defendants, and appeal by the respective plaintiffs. *Error and new trial ordered.*

The parts of the appeal which are pursued, relate to certain rulings on evidence and to portions of the charge.

The plaintiffs offered evidence to prove these facts: On November 11th, 1917, Edward J. Sisk, now represented by the defendant administrator, and Patrick and Thomas F. Sisk, defendants herein, were copartners in the livery business under the firm name of Sisk Brothers, and were also funeral directors; and the defendants Ellen, Robert, and William Audley were copartners in the livery business. On said day plaintiffs, by one Redmond, applied to the Sisk Brothers for three carriages to take them and others to a funeral. Sisk Brothers agreed to furnish the carriages for November 12th, and upon their own responsibility ordered them from the defendant Audleys; and the plaintiffs subsequently paid Sisk Brothers for these carriages. The plaintiffs went in one of the three carriages, a closed hack, and other persons in the other two carriages, to the funeral. At the cemetery the plaintiffs left the carriage and attended the services at the grave.

After plaintiffs had left the carriage, Brown, an employee of the Audleys, sent by them with the carriage as the driver to attend the funeral, got off the box seat of the carriage and stood around for some twenty minutes, and allowed the horses to remain unhitched, and without any means to prevent them running away. The plaintiffs returned from the service to the carriage, Brown opened the carriage door and they entered, and Brown then carelessly slammed the door to with such violence as either to frighten the horses, or so loud that the horses heard it and regarded it as a signal for them to start ahead, and they immediately started, and finally ran away.

Brown was about seventy years of age, lame in his left leg, and with little activity for a man of his years. He had, when he left the driver's seat, caught the reins on the left-hand side of the carriage, while he was on the right-hand side when helping the plaintiffs into the carriage and shutting the door. The reins had been left by Brown where he could not reach them and were inaccessible to him, and he could not jump upon the driver's seat and get possession of . them; and the passengers could not reach them, and could not escape from the carriage except by opening the door and jumping out.

After the horses started, Brown yelled at them in such manner that the horses became more frightened and went the faster, and on account of his age and decrepit condition he was unable to get hold of the reins or reach the heads of the horses.

The plaintiff Edward Gannon, seeing this situation and fearing for the safety of his wife and sister-in-law, the other plaintiffs who were in the carriage, opened the door and sprang from the carriage and endeavored to stop the horses, but was unable to do so, and in running was injured. After the carriage passed through the gates of the cemetery the plaintiffs Mrs. Redmond and Mrs. Gannon were thrown from the carriage and seriously injured.

*Charles S. Hamilton,* for the appellants (plaintiffs).

*Walter J. Walsh* and *Robert C. Stoddard,* for the appellees (defendants).

WHEELER, C. J.   The action is one to recover damages for personal injuries alleged to have been suffered through the negligence of Brown, the driver of a carriage belonging to the defendant Audleys, who was at

the time of the accident a servant in the general employment of the Audleys, but under the joint control and direction of the defendants, Sisk Brothers and the Audleys.

The liability of both the Sisks and the Audleys was in issue, as well as the negligence of Brown and the contributory negligence of the plaintiffs.

The defendants were permitted to prove by two witnesses that Brown, the driver of the carriage, was a competent driver. The plaintiffs objected to the offer of this proof, because the issue of Brown's negligent conduct was to be determined by ascertaining whether he was in fact negligent at the time of the accident.

If this evidence was offered for the purpose of disproving Brown's negligence at the time of the accident, it was inadmissible. Skill, competency, or carefulness by one in the performance of a certain kind of work, has no tendency to establish that on a certain occasion he acted with skill and competency and carefulness in the performance of a similar work. A reputation of being a careful driver will not tend to prove that this driver was not negligent upon a given occasion. We have repeatedly so held. *State* v. *Goetz*, 83 Conn. 437, 76 Atl. 1000; *Budd* v. *Meriden Electric R. Co.*, 69 Conn. 272, 37 Atl. 683; *Bassett* v. *Shares*, 63 Conn. 39, 27 Atl. 421; *Morris* v. *East Haven*, 41 Conn. 252.

The trial court suggests, in its memorandum upon the motion to set aside the verdict, that this evidence was limited to the issue of whether the Audleys had furnished a skilful and competent driver, as raised by the answer. The answer did allege that the Audleys furnished Sisk Brothers suitable horses and an experienced and careful driver, in compliance with its order from Sisk Brothers. And this was their duty as liverymen. But the evidence of these two witnesses was not limited to this issue, but apparently was offered to

disprove negligence on the part of the Audleys at the time of the accident. Reference to the claims and objections made at the trial shows this. The court in its memorandum says that this evidence could hardly have harmed the plaintiffs, since the jury were told in the charge that if they found the driver guilty of actionable negligence it was of no consequence that he was in general, or had the reputation of being, a careful and competent driver. But this does not exclude from the consideration of the jury the fact of competency, as one of the factors from which the negligent conduct of the driver might be found; and without such exclusion, we cannot say that it was not used for this purpose, and if so used, it was harmful error.

Preceding this instruction the court charged the jury as to the duty of a liveryman: "It is his duty to furnish a safe coach, harness and horses, and a competent and careful driver. If you find that these defendants, the Audleys, furnished on this occasion a safe coach, safe horses and a competent and careful driver, then they are not liable in this case."

This did correctly define the duty of the liverymen in furnishing the coach, horses and driver to the Sisk Brothers. It did not define the duty of the Audleys at the time of the accident, provided Brown was at that time acting as their servant, or the servant of both Sisk Brothers and the Audleys. If he was then acting as the servant of the Audleys, and the proximate cause of the injuries to the plaintiffs resulted from his negligence, the Audleys would be liable, no matter whether the horses, coach and driver furnished Sisk Brothers were proper or not. Another part of the charge clearly states this, but we cannot say that the jury may not have considered and followed this erroneous instruction.

The court also instructed the jury, in accordance with defendants' request: "In determining whether or not

the plaintiffs consented to Sisk Brothers placing their order for the hack in question with the defendant Audley estate and just acted as the agent of the plaintiffs for that purpose, the jury may take into consideration the allegations in the different complaints of the plaintiffs." These complaints set up a joint liability by Sisk Brothers, a copartnership, and by the Audleys, also a copartnership. Sisk Brothers claimed upon the trial that they were gratuitous agents for the plaintiffs in employing the Audleys. The plaintiffs are justified in claiming that this instruction gave to the allegations the weight of admissions tending to prove this claim. The complaints are not susceptible of this construction; their allegations are that both sets of defendants had the management and control of Brown, the driver.

Another of the defendants' requests to charge, given the jury, was, we think, standing by itself, erroneous. "If the jury find that the plaintiffs ratified the act of Sisk Brothers in ordering the hack in question from the defendant Audleys, then the defendant Sisk Brothers is not responsible."

The plaintiffs ordered the carriage of Sisk Brothers. The mere fact that Sisk Brothers ordered it of the Audleys, and thereafter the plaintiffs ratified their act, is no more than saying the plaintiffs thereafter approved of their act. This approval would not affect the question of Sisk Brothers' liability one way or the other. Their contractual relation was with the plaintiffs, and that could not be affected by the plaintiffs approving of what they had done in order to carry out their agreement. And their approval would plainly not touch the situation if the driver of the carriage was, at the time of the accident, under the control of Sisk Brothers.

Plaintiffs complain of the instruction that unless the plaintiffs prove, by the preponderance of the evidence, that the Audleys are partners, the verdict

must be for the Audleys. This was one of the requests to charge, made by the defendants, which the court refused to give. The court properly instructed the jury: "If you find no partnership on the part of the Audleys, but you find the responsibility resting on the Audleys for negligent acts, you are entitled to render a verdict against such of them, I say personally, as participated in creating this situation of furnishing the team and the driver."

Complaint is made of the manner in which the theory that the Sisks were acting as agents of the plaintiffs in the employment of the Audleys, was submitted to the jury. We see no error in this. The case was fairly and cogently summarized by the court in its charge, as follows: "If you find that this driver was in the general employment of the Audleys and at the same time in the special employment of the Sisks, and that both had authority over him and control over him at the time of the accident, he had in fact two masters, and where a servant is thus in the employ of two masters, either or both of them may be held for his negligent acts. . . . If you find from a careful consideration of all the evidence that the sole and exclusive control of this driver and team was with the Audleys at the time this accident occurred, then the Audleys, some or all, are responsible for the acts of the driver. If you find the direction and control was in part with the Audleys and in part with the Sisks, then both are liable. And if the exclusive control was at the time with the Sisks, then only the Sisks are responsible, notwithstanding that the team was owned and the driver paid by the Audleys."

Error is assigned in the refusal of the court to charge in the language of *Delinks* v. *New York, N. H. & H. R. Co.*, 85 Conn. 102, 81 Atl. 1036, as to whether one is guilty of contributory negligence who attempts to

escape a peril to which he is subjected by the negligence of another, by doing an act in itself dangerous. The substance, and nearly the form, of this request was given by the court as quoted in assignment of error ten. A better arrangement and order in the charge, and less repetition, would have made the instructions clearer to the jury and quite likely have avoided most of the criticisms of the charge.

The court's own conception of the case did not need to be supplemented by the reading into the charge of the requests of the parties. If requests to charge contain statements which the court desires to incorporate in the charge, these should, if possible, be inserted in the charge in connection with the subject of which they form a part. If this cannot be done, the orderly place for these is after the court has completed the body of the charge and not at the beginning of the charge as placed in the charge before us.

There is error, the judgment is set aside and a new trial ordered.

In this opinion the other judges concurred, except BEACH, J., who dissented.