Dwyer *v*. Redmond.

---

PHILIP R. DWYER *vs*. JOHN REDMOND.

Third Judicial District, New Haven, June Term, 1925.

WHEELER, C. J., BEACH, CURTIS, KEELER and MALTBIE, Js.

A fraudulent representation in law is one that is either knowingly
untrue, or made without belief in its truth, or recklessly made
and for the purpose of inducing action upon it.

A representation recklessly made is but a species of statement made
as true without an honest belief in its truth.

When false representations are made for the purpose of inducing
one to act to his injury, it is a necessary implication that they
were made with the intent to deceive.

A false statement, made to induce action, is always fraudulent unless
there is an honest belief in its truth; and the motive and inten-
tion of the maker are immaterial.

A false statement which is made merely through negligence or
ignorance or stupidity does not constitute fraud; and, there-
fore, in the present case, the trial court erroneously instructed
the jury that the defendant could recover upon his counterclaim
if he proved, among other things, that the plaintiff's false
statements, made to induce the purchase of a motortruck, were
"known by the plaintiff, or by the exercise of reasonable care
might have been known by the plaintiff, to be false and un-
true."

It appeared that after the defendant learned of the falsity of the
plaintiff's representations concerning the truck, he paid three
monthly instalments upon the purchase price. The trial court
. refused to charge the jury, as requested by the plaintiff, that

Dwyer *v.* Redmond.

these payments constituted a waiver of the right to complain
of the fraud, and instructed them that the question of waiver
was one of fact for their determination, and that, upon that
issue, the payments might be strong, but not conclusive, evidence.
*Held* that the instruction, as given, was proper, since the de-
fendant's counterclaim did not involve his right to rescind the
contract on the ground of fraud, but only his right to recover
damages therefor.

It is preferable for the trial judge to incorporate in the body of his
charge, and in his own language, such of the parties' requests to
charge as he deems it proper to grant, rather than to state them
separately with the modifications and explanations usually
necessary.

Argued June 4th—decided July 30th, 1925.

ACTION to recover the balance alleged to be due
on the purchase price of a motortruck, brought to the
Superior Court in New Haven County and tried to
the jury before *Haines, J.,* in which the defendant
filed a counterclaim for damages alleged to have re-
sulted from fraudulent representations made by the
plaintiff in the sale of the truck; verdict and judgment
for the defendant for $429, and appeal by the plaintiff.
*Error and new trial ordered.*

*Walter J. Walsh,* for the appellant (plaintiff).

*Charles S. Hamilton,* with whom was *John J. Sulli-
van,* for the appellee (defendant).

MALTBIE, J.   This is the same case which will be
found in the reports of this court as *Dwyer* v. *Red-
mond,* 100 Conn. 393, 124 Atl. 7. The plaintiff brought
the action to recover the balance due upon the price
of a used automobile truck which he had sold the de-
fendant, and the defendant filed a counterclaim in
which he alleged that he had been induced to make
the purchase by fraudulent representations made to
him by the plaintiff.   The representations set forth

Dwyer *v.* Redmond.

in the counterclaim and which defendant claimed to have proved, were that plaintiff represented to him that this truck was manufactured in the year 1917, except the engine, which was manufactured in 1918, and to further influence defendant to the belief that the year of the truck's manufacture was 1917, the plaintiff showed him a copy of the registration certificate of this truck as set out to the Commissioner of Motor Vehicles of the State of Connecticut, in which the year of manufacture of the truck was stated to be 1917. In fact the truck was of the year of manufacture 1915, and the engine of the year of manufacture 1914, as the plaintiff well knew.· Plaintiff further represented to defendant that the truck was in good running condition, and was capable of doing all the work which a truck of its year of manufacture and of the year of manufacture of the motor, was capable of doing, ordinary wear by use of the truck since its manufacture excepted. The truck, as the plaintiff well knew, was not in good running condition and was not capable of doing the work represented by the plaintiff, but was in fact practically worthless. As a result of and in reliance upon these representations, the defendant bought the truck at an agreed price of $650 and has paid thereon the sum of $200, and has expended $250 in the endeavor to repair the truck so that it might be in reasonable working condition, and been forced to pay $259 in the hire of trucks to replace the truck so purchased, which is now in the possession of the defendant but valueless. Upon the trial defendant offered evidence to prove that he had sold this truck for $60.

Plaintiff filed a general denial of the allegations of the counterclaim and claimed to have offered evidence upon the trial disproving all of its allegations. While the finding does not specifically set forth that the

plaintiff knew these representations to be false, the
court left this question to the jury, and from the facts
which it is found the defendant offered evidence to
prove, the jury might have drawn the inference that
the plaintiff knew that these representations were false.
None of the errors in the charge as made, or in the
request to charge, as to the subject of fraudulent rep-
resentations, present any substantial point meriting
our consideration, except in three particulars.   The
second error is that the counterclaim did not charge
that the representations were made recklessly, and
hence this issue was not before the jury.   The plain-
tiff's sixth request presents this very claim, and it is
apparent that it was considered in the trial court with-
out objection until after the verdict had been rendered.
Under these circumstances the plaintiff is in no posi-
tion now to pursue the point.   The tenth assignment
of error does present a substantial question as to the
correctness of the following part of the charge:   "It is
not necessary for the defendant to have proven all the
things he claims in his counterclaim were false repre-
sentations or false warranties.   If he has proven, by
a fair preponderance of the evidence, that the state-
ments made by the plaintiff to induce the defendant
to purchase the truck were false and untrue in any
particular, as set up in his counterclaim, and known
by the plaintiff, or by the exercise of reasonable care
might have been known by the plaintiff, to be false and
untrue, and the defendant believed these statements
and was induced thereby to make the purchase, then
the defendant is entitled to recover on his counter-
claim.   And false representations may be made both
by words and acts.   Any false statement, token, or
exhibition of anything which was false and known to
the plaintiff to be false, and which induced the de-

fendant to purchase the truck, is sufficient to make the sale invalid."

Plaintiff's criticism of this portion of the charge is that "the jury were instructed that they could find the plaintiff guilty of fraud even if his only and sole fault was in being negligent."

The charge is that defendant is entitled to recover if he has proven: (1) that the representations as made by the plaintiff were false in any material particular; (2) that they were made by plaintiff to induce defendant to purchase the truck; (3) that they were known to plaintiff to be false, or by the exercise of reasonable care might have been known by plaintiff to be false; (4) that defendant in reliance upon these representations was thereby induced to purchase the truck.

Under this charge, if the jury found that the plaintiff made these representations to induce defendant to make this purchase, that they were in fact false, that plaintiff believed them to be true, but might by the exercise of reasonable care have ascertained their falsity, and that defendant, in reliance upon these representations, purchased the truck, defendant was entitled to recover under his counterclaim. The jury were thus instructed that if the plaintiff could, by the exercise of reasonable care, have ascertained that the representations were false, the other elements being proven, that would be fraud. Fraud cannot be found upon false representations made negligently, or erroneously, but made in good faith and not recklessly.

In determining whether a conveyance was made with a view to insolvency, we held that the failure of the insolvent to inquire as to his actual financial condition might be negligence, but could not be evidence of fraud, saying: "And it is equally obvious that he could not have contemplated insolvency as impending,

unless he actually knew or believed that his property was insufficient for the payment of his debts. Facts which by inquiry he might have ascertained, if in truth he did not know them, or believe in their existence, could have had no influence upon his purposes or his actions. And notice enough of his actual condition to put him upon inquiry, if that inquiry had not been made, could have had no influence upon his actions. Legal fictions and equitable presumptions have no effect upon the actual conduct of men. An omission to inquire may be evidence of negligence, but negligence is not fraud, either in law or in fact, and neither proves nor indicates a positive intention to commit a fraud, whatever penal consequences the law-giver in his wisdom may attach to such negligence." *Quinebaug Bank* v. *Brewster*, 30 Conn. 559, 562. And in *Knower* v. *Cadden Clothing Co.*, 57 Conn. 202, 17 Atl. 580, we held that where the title of a vendee is attacked on the ground of an intent on the part of the vendor to defraud his creditors by the transfer, it is necessary that the vendee should have had an actual belief that the vendor made the transfer with such intent. We do not recall any cases in this jurisdiction more closely in point. In other jurisdictions the rule that we have stated to be the law is generally upheld. In *Boulden* v. *Stilwell*, 100 Md. 543, 552, 60 Atl. 609, the opinion states the rule of that jurisdiction: "The foundation of the action is actual fraud, and nothing short of this will suffice. Consequently, a misrepresentation believed by the speaker to be true, though induced by his ignorance or negligence, will not sustain an action for deceit." See also *Donnelly* v. *Baltimore Trust & Guarantee Co.*, 102 Md. 1, 13, 61 Atl. 301. In *Kountze* v. *Kennedy*, 147 N. Y. 124, 129, 41 N. E. 414, the court says: "The representation upon which it is based must be shown not only to have been false and ma-

terial, but that the defendant when he made it knew that it was false, or not knowing whether it was true or false and not caring what the fact might be, made it recklessly, paying no heed to the injury which might ensue. Misjudgment, however gross, or want of caution, however marked, is not fraud. . . . But if through inattention, want of judgment, reliance upon information which a wiser man might not credit, misconception of the facts or of his moral obligation to inquire, he makes a representation designed to influence the conduct of another, and upon which the other acts to his prejudice, yet, if the misrepresentation was honestly made, believing it to be true, whatever other liability he may incur he cannot be made liable in an action for deceit." In *Nash* v. *Minnesota Title Insurance & Trust Co.*, 163 Mass. 574, 578, 40 N. E. 1039, the court thus summarizes in part, and adopts, the opinion in the case of *Derry* v. *Peek,* L. R. 14 App. Cas. 337, which finally settled the law of England upon the subject of fraudulent representations: "In other parts of the opinion, and in the opinions of the other law lords in the same case, and in other cases which have since been decided, it is made clear that by the law of England mere ignorance, or negligence, or stupidity on the part of the person making the representations does not constitute fraud if he intends honestly to tell the truth, although his statements understood according to their seeming meaning may be ever so misleading." Lord Herschell in his opinion in *Derry* v. *Peek, supra,* p. 375, says: "In my opinion making a false statement through want of care falls far short of, and is a very different thing from, fraud, and the same may be said of a false representation honestly believed though on insufficient grounds." See also *Warfield* v. *Clark,* 118 Iowa, 69, 75, 91 N. W. 833; *Shackett* v. *Bickford,* 74 N. H. 57, 58, 65 Atl. 252;

26 Corpus Juris, 1129, cases cited in note 84; 12 R.C.L., § 91, p. 334, and cases cited in note 6.

We state our rule in *Sallies* v. *Johnson,* 85 Conn. 77, 82, 81 Atl. 974, to be this: "A fraudulent representation in law is one that is either knowingly untrue, or made without belief in its truth or recklessly made and for the purpose of inducing action upon it." See also *Colvin* v. *Delaney,* 101 Conn. 73, 77, 124 Atl. 841. The three classes of fraudulent representations, as we state in *Sallies* v. *Johnson,* are in reality two, since the second and third classes are in reality one. The element that the representation was made with intent to deceive, as we have held, is supplied by the allegation or proof of the false representations. "When false representations are made for the purpose of inducing an act to another's injury, necessarily there is the plain implication that these were made with the intent to deceive." *Kornblau* v. *McDermant,* 90 Conn. 624, 628, 98 Atl. 587; *Sallies* v. *Johnson,* 85 Conn. 77, 82, 81 Atl. 974. Examples of representations made without belief in their truth are referred to and our law applied in *Scholfield Gear & Pulley Co.* v. *Scholfield,* 71 Conn. 1, 19, 40 Atl. 1046: "In matters susceptible of actual knowledge, if the party who has and is known to have the best means of knowledge, makes an affirmation contrary to the truth, in order to secure some benefit to himself, the law will treat him as stating that he knows that whereof he affirms, and so as guilty of a fraud, although he spoke in ignorance of the facts; because he asserts that he knows what he does not know." See also *Water Commissioners* v. *Robbins,* 82 Conn. 623, 74 Atl. 938; *Chase's Appeal,* 57 Conn. 236, 263 *et seq.,* 18 Atl. 96. Making a statement recklessly is a species of statement made as true without having a belief in its truth, as Lord Herschell has pointed out with convincing force in *Derry* v. *Peek,* L. R. 14 App.

Dwyer *v.* Redmond.

Cas., at page 374: "I think the authorities establish the following propositions: First, in order to sustain an action of deceit, there must be proof of fraud, and nothing short of that will suffice. Secondly, fraud is proved when it is shewn that a false representation has been made (1) knowingly, or (2) without belief in its truth, or (3) recklessly, careless whether it be true or false. Although I have treated the second and third as distinct cases, I think the third is but an instance of the second, for one who makes a statement under such circumstances can have no real belief in the truth of what he states. To prevent a false statement being fraudulent, there must, I think, always be an honest belief in its truth. And this probably covers the whole ground, for one who knowingly alleges that which is false, has obviously no such honest belief. Thirdly, if fraud be proved, the motive of the person guilty of it is immaterial. It matters not that there was no intention to cheat or injure the person to whom statement was made."

The instruction of the trial judge we have quoted was given near the close of the charge and must be presumed to have been freshest in the minds of the jury when they came to deliberate upon the case. Of all the doctrines of the law which in these days is best understood by a jury, it is that of reasonable care, for it is the doctrine they hear most frequently in the many negligence actions tried before them. When the jury heard the instruction that if they found proven that a false representation as charged was believed by the plaintiff to be true, but that the plaintiff might by the exercise of reasonable care have known it to be untrue, and that it had been relied upon by the defendant in purchasing the truck, he was entitled to recover on his counterclaim, we cannot but think that this succinct statement would have attracted the jury's

especial attention and may have found lodgment in
their understanding and memory. Earlier in the
charge the trial court instructed the jury that it might
even be that if the plaintiff believed the representa-
tions to be true but had no reasonable ground for so
doing, he would still be chargeable with fraud. No
doubt the trial court had in mind a statement in *Schol-
field Gear & Pulley Co.* v. *Scholfield*, 71 Conn. 1, 18,
40 Atl. 1046, to the effect that a charge of fraud might
be supported by proof that representations were made
under a belief in their truth for which there was no
reasonable ground. But that statement, not material
to the case then under consideration, we are satisfied,
in the light of the authorities cited, cannot be main-
tained. The portion of the charge we have quoted
goes even farther than that and must be held to con-
stitute error.

Plaintiff claims that defendant by his course of con-
duct has waived his right to a recovery on his counter-
claim based upon fraudulent representations by plain-
tiff in the sale of the truck. The defendant, when he
purchased the car on December 2d, 1920, gave notes
for its price, six of $100 each and one of $50, the first
maturing December 18th, 1920, and the others at
monthly intervals thereafter. He took the truck into
his possession almost at once upon the purchase, and
he claimed to have proved that he began immediately
to have difficulties in its operation; that thereafter he
made many attempts to use it with almost no success
and spent considerable money in the effort to put it
in condition to use; that he repeatedly spoke to the
plaintiff about this and asked him to take the truck
back, but the plaintiff assured him that all that was
necessary were little repairs and adjustments; and that
this situation continued until May, 1921, when he
finally discovered the misrepresentation as to the years

of manufacture, and learned that the truck was absolutely worthless. Meanwhile, he made three payments toward the purchase price, $100 on December 18th, 1920, and $50 on April 16th, and $50 on May 19th, 1921. One of the claims of the plaintiff was that the defendant had waived his right to damages for the fraud, and he filed rather extensive requests to charge in regard to it, particularly emphasizing the payments which had been made. The court charged that the defendant might waive his right to claim damages for the fraud and went on: "If he made a payment after finding it out, it might be strong evidence that he did intend to waive the claim for fraud, but it is not conclusive evidence. It is conceivable that a payment might be made and be quite consistent with no thought of giving up his right to sue for fraud. So that I charge you that it is a question of fact for you to determine whether at any stage of the history of this case, at the time of the payments, the defendant made the payments with the intention of foregoing his claims for fraud; it is a question of fact for you to determine. You see also there is a fact there for you to consider, whether he knew of the fraud fully at the time of any of these payments. The plaintiff says he must have known as much at that time as he did at any time about it or as he has since known about it, because he says that Mr. Wilcox told him the truck was no good. Mr. Wilcox's opinion does not necessarily charge the defendant with notice that the truck was no good. He got Wilcox's opinion, it is true; but you would have to find as a fact that this defendant actually did know, when he made the payments, that he had been defrauded, and then that in making the payments he did it voluntarily with intention or willingness to waive his claim."

The waiver in question, it is to be noted, is not one

Dwyer *v.* Redmond.

of a right to rescind the contract, but of a right to recover damages for the fraud at its inception, and to that situation we deem the charge apt and adequate. *Pryor* v. *Foster,* 130 N. Y. 171, 175, 29 N. E. 123; *St. John* v. *Hendrickson,* 81 Ind. 350, 352.

It is true that the counterclaim alleges merely that the plaintiff knew the representations as to the condition of the truck to be false, and does not state that any of the representations were made in reckless disregard of their truth or falsity, or in a belief that they were true, which was not supported by adequate grounds, but these were legitimate conclusions to make from the facts stated. In reading to the jury certain of plaintiff's requests to charge, the trial court did not state with the degree of certainty to be desired that it was laying down principles of law which were to govern in the determination of the case; *Scholfield Gear & Pulley Co.* v. *Scholfield,* 71 Conn. 1, 18, 40 Atl. 1046; but we cannot see how the jury could have otherwise regarded them. We must, however, reiterate what we have said before, that it makes for a clearer and more orderly statement and affords to the jury greater ease of understanding, if the trial judge incorporates into the body of his charge, in his own language, the substance of such requests to charge as he deems it proper to grant, rather than to leave them to be stated separately, with the modifications and explanations usually necessary. *Gannon* v. *Sisk,* 95 Conn. 639, 647, 112 Atl. 697; *Roth* v. *Chatlos,* 97 Conn. 282, 286, 116 Atl. 332; *Daniels* v. *Grand 5, 10 and 25-Cent Stores, Inc.,* 99 Conn. 415, 417, 121 Atl. 104.

There is error and a new trial is ordered.

In this opinion the other judges concurred.