[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a civil action brought by Thomas Sutkowski and his wife who uses the name Judith Hopkins against Richard Tarro and his wife, Kathleen Tarro.
The plaintiffs bring this action in five counts contained in an amended complaint filed December 13, 1994. The first count is an action for intentional misrepresentation in which the plaintiffs allege that Thomas Sutkowski purchased approximately $75,000 worth of goods consisting of furniture, rugs, vases, etc., from the defendants over an approximate ten month period of time in 1992, that these purchases were based upon representations of fact by the defendant Kathleen Tarro as to manufacture, age, origin, quality, value and genuineness of the goods, that said representations were false, that the defendant Kathleen Tarro made said representations knowing they were false and with the intention that Thomas Sutkowski rely thereon and purchase the goods and that Thomas Sutkowski reasonably relied upon said representations and purchased said CT Page 11461 goods, that as a direct result of defendant's misrepresentations he was damaged and that he cancelled all goods not delivered and made demand for all deposits and payments thereon.
The second count alleges a violation of the Home Improvement Act in that subsequent to the purchases mentioned above, the defendants, Kathleen Tarro and Richard Tarro, performed substantial home improvements as that term is defined in Section 20-419(4) of the Connecticut General Statutes at the plaintiffs' residence including, but not limited to, heating installation, landscaping, and ceiling and wall improvements; that the defendants violated said Act in that they held themselves out to be contractors and/or salesmen without first obtaining a certificate of registration and that they offered to make said improvements without having a current certificate of registration and that each of the defendant allowed the other to act as a salesman for the other's behalf when neither defendant was registered as a home improvement salesman; that they performed home improvements without a written contract containing a notice of cancellation. The plaintiffs also allege that the defendants performed home improvements without prior authorization and that they did so without posting a bond as required by statute.
In the third count the plaintiffs allege that the defendants violated the Connecticut Unfair Trade Practices Act (CUPTA) and that the defendants have been engaged in the conduct of a trade and/or commerce and that their conduct in the sale of the goods as alleged in count one constitutes unfair and/or deceptive practices which are immoral, unethical, oppressive and/or unscrupulous and which have a tendency to cause substantial injury to consumers such as the plaintiff, Thomas Sutkowski, all in violation of Section 42-110b
of the Connecticut General Statutes.
In the fourth count the plaintiffs also allege an Unfair Trade Practice by virtue of the acts alleged in the second count as provided for in Section 20-427(b) and/or Section42-141(b) of the Connecticut General Statutes.
In the fifth count the plaintiffs allege negligence maintaining that the representations referred to in the first count were false and made negligently and/or without a CT Page 11462 reasonable basis with the intention that the plaintiff Thomas Sutkowski relied thereon all to his damage.
The defendants have filed an Answer, Special Defenses and a Counter-Claim. In their Answer, the defendants deny all allegations of improper conduct. In their First Special Defense the defendants allege that they made no representations to the plaintiffs but sold all items on a "final sale", "as is" basis. In the Second Special Defense they allege that any goods or items sold to the plaintiff were sold following an offer by the plaintiff that was accepted by the defendants. In the Third Special Defense the defendants allege that they are not engaged in the business of purchasing and selling antique furniture, rugs or glassware and did not hold themselves out as professionals in this area and that the plaintiff represented to the defendants that he was knowledgeable in the area of antiques and oriental rugs and made offers to purchase for specific prices that were made by the plaintiff and accepted by the defendants.
The defendants have filed two counter-claims, a first and second counter-claim, which have the effect of a first and second count. In the first counter-claim, the defendants allege that between January 28, 1992 and December of 1992 the plaintiff, Thomas Sutkowski, and Kathleen Tarro entered into an agreement whereby the defendant was to assist the plaintiff in doing interior decorating at the plaintiff's home located at 126 Warrenton Avenue, Hartford, Conn. They allege that the plaintiff offered the defendant $350 for an initial evaluation and $150 per hour thereafter. The interior decorating included the picking out and the purchasing of wallpaper, paint, floral arrangements, and bedding and required the defendant to shop and purchase the needed goods in stores and at auctions. The defendant performed the services required of her according to the agreement, submitted a bill to the plaintiff in the amount of $87,750, demanded payment and was refused. They allege that the agreed value of said goods and services is $87,750 and therefore Mr. Sutkowski owes them the sum of $87,750 plus interest.
The second counter-claim is based on quantum meruit and alleges that the reasonable value of the goods and services provided by Kathleen Tarro amounted to $87,750, that she made a demand for payment and that Mr. Sutkowski refused to make such payment. CT Page 11463
This case was tried before the court for fourteen days spread over a period of three months due to vacations, illness and holidays. It contains considerable detail. The plaintiffs filed forty-seven exhibits, one of which had twenty-seven invoices and another twenty-three checks, and the defendants filed approximately twenty-two exhibits. Because of the long period of time over which the case was tried and the detail involved, the court ordered a transcript of the record on March 1, 1995 in order to insure accuracy in arriving at its decision. This transcript was delivered piecemeal to the court in the last weeks of August through September 8th.
The court having heard the parties, examined their briefs and reply briefs, examined all of the exhibits, many of them more than once, and having read large portions of the transcript of the record, makes the following findings:
Thomas Sutkowski is a man in his early 50's, intelligent and educated, who at the time of the incidents described in this case was a computer systems analyst who had been recently laid off by Fleet Bank, was on severance pay, obliged to call in each day and make himself available to Fleet Bank if required, but in the meantime was working in Albany, New York, for a company known as Polaris, later bought out by another company.
Mr. Sutkowski is married to Judith Hopkins, a professional therapist, and lived with her and her daughter by another marriage at 126 Warrenton Ave., Hartford, Conn. They had purchased this home in November or December of 1991 and it was described by Mr. Sutkowski as a completely restored victorian home. This home was sparsely furnished considering its size. Mr. Sutkowski had become interested in victorian architecture and in furnishing his home as authentically victorian as possible. Mrs. Hopkins had an office in Manchester and used one room in the house as an office to see patients at the time of the incidents involved in this case. She was not as interested in the decorating of the home as Mr. Sutkowski. She was not aware of the extent of her husband's purchases.
In December of 1992 Ms. Hopkins met Mrs. Tarro at the Sutkowski home and had a short conversation with her. Ms. CT Page 11464 Hopkins related that conversation to her husband. Mrs. Tarro related the same conversation to Mr. Sutkowski. The stories were so divergent and Mrs. Tarro's version so contrary to Mr. Sutkowski's knowledge of his wife's personality that he became suspicious of the Tarros. He discussed his ten month relationship with the Tarros and his purchases with his wife. They then called an attorney and after discussing the matter with him, Mr. Sutkowski phoned Mrs. Tarro to cancel the transactions and on January 8, 1993 he sent a letter of cancellation and demanded a refund.
Mr. Sutkowski appears to be a sensible individual capable of earning a very good income from which he was able to save substantial sums. Although puzzled by his conduct over the ten months involved in this case, the court found his testimony to be very credible and backed up by documentation or by conclusions reached from other credible evidence in the case. The court found the evidence of Ms. Hopkins to be of the same caliber as that of her husband.
Kathleen and Richard Tarro, despite their attempts to disguise it, are engaged in the business of selling antiques and collectibles. Mrs. Tarro represents herself as being in the interior decorating business. The Tarro's have been involved in other litigation concerned with allegations of fraud in the selling of antiques and oriental rugs and collectibles and violation of CUTPA[1]. They live in a large house in New Britain, having over 10,000 sq. feet and more than 20 rooms which has been described as being full of all sorts of furniture represented to be antiques and collectibles as well as oriental rugs. Mrs. Tarro is a former model quite flamboyant in her appearance and apparently quite impressive when acting on her own. The court found the testimony of Mrs. Tarro and her husband and that of their former helper, Rokie Stetson, to be totally unworthy of credit.
Thomas Sutkowski on January 20, 1992 saw an ad in the Hartford Courant under the heading of "Antiques and Collectibles" advertising a large oriental rug and giving a certain telephone number. He phoned and made contact with Mrs. Kathleen Tarro, arranged an appointment later that day and went to her house. There was no other explanation for his conduct throughout the next ten months with relation to the Tarros than to say that he was very much impressed with Mrs. Tarro, the very large home, the decor and the possessions CT Page 11465 included in it and came completely under the influence of Mr. and Mrs. Tarro. He came to the point where he regarded Mr. and Mrs. Tarro as his friends and spent a great deal of time with them. Mrs. Tarro portrayed herself as very sophisticated and an important person in the world of antiques and collectibles, well known in the major auction houses with wealthy clients and with business interests from Lenox, Mass., to Florida. She maintained that she was well known in such well known auction houses as Sotheby's, Christie's and Gatsby's.
The Tarros worked together, although Mrs. Tarro had more contact with Mr. Sutkowski when it came to the selling of the alleged antiques, oriental rugs and collectibles. Many of the twenty-seven invoices indicate that Richard Tarro is the person selling and of the $75,043 in checks made out to the Tarros, $49,800 were made out to Richard Tarro and cashed by him, while $18,093 plus $7,150 were made out to Kathleen Tarro and cashed by her. With the exception of $7,150 paid for some miscellaneous items evidenced by checks, for each item in the balance of $75,000 worth of goods sold the Tarros made out an invoice numbered in sequence from a printed pad. Twenty of these invoices said in Mrs. Tarro's handwriting, "sold by Richard Tarro", 9 Sunnyledge Rd., New Britain, Conn., the date, the name of Tom Sutkowski with his address, the item or items, the price of same, the amount paid for said item or amount of deposit for same, and each contained the words "sold as is — sale final" and each was signed by Tom Sutkowski. The seven others said "sold by Kathleen Tarro." Following is a list of the items purchased, together with the date of purchase and the amount of the sale:
January 20, 1992 1 Gilbert Clock $1,000 January 20, 1992 1 Oriental Rug 1,500 January 20, 1992 3 Oriental Rugs 500 January 28, 1992 1 Chinese Carpet 5,500 February 12, 1992 1 Oriental Design Vase 450 February 12, 1992 1 Bedroom Set 3,000 February 12, 1992 1 Dining Room Set 10,000 February 12, 1992 1 Chinese Carpet 4,000 March 27, 1992 1 Caucasian Rug (37"x93") 3,000 March 27, 1992 1 Oriental Rug (9"x12") 4,000 March 27, 1992 1 Kirman Oriental Rug (8"x12") 8,000 March 27, 1992 1 Oriental Rug (114"x55") 5,000 (this rug has a name on it but it is unreadable) CT Page 11466 March 27, 1992 1 Oriental Rug (Sirock)(50x87) 3,800 March 27, 1992 1 Penslam Rug (103"x24") 1,350 March 27, 1992 1 Penslam Oriental Rug (114x30) 1,700 Invoice #278883 (undated) is for the sale of 1 Vintage Door and all hardware 1,250 July 19, 1992 1 Swingset with canopy, cushions, chairs, tables, large basket w/flowers and greens, and a rug 3,000 November 7, 1992 Large flowered picture 550 November 7, 1992 1 Marble Top Table 1,850 November 7, 1992 1 Silver Server w/grapes 2,000 November 7, 1992 1 pair Chrub Lamps, crystal with prisms 2,500 November 7, 1992 1 Large 8 arm chandelier crystal with prisms 23,500
Many of the invoices show a deposit and balance due and the date it is due. A number of them, all sequentially numbered, are actually receipts indicating the payment of balances. As indicated earlier, the total shown paid, together with certain checks which were introduced, equal the sales prices on the various items sold.
Invoice #278862 for the first sale bears the legend "as soon as check clears, items will be picked up approximately Wednesday evening 1/22/92." At the bottom of this invoice is a message obviously placed there at a different time: "Mr. Sutkowski picked up all items Friday January 24, 1992 due to bad weather."
On many of the slips showing a deposit, there appears the statement "all deposits non-refundable."
The majority of these invoices show a deposit with balance due later indicating future delivery. The sale of January 28th indicated that the balance was due April 28th. On February 10th there is a receipt for $1,000 as an additional deposit, again marked non-refundable with the notation that the balance of $4,000 is due on or before April 28, 1992. The receipt for the bedroom set #278872 indicates a deposit of $1,000 and the balance due of $2,000 and an additional deposit of $1,000 due May 1, 1992, with a final payment not until July 1. Again, all deposits non-refundable.
The sale of February 12th of the dining room set for CT Page 11467 $10,000 shows a deposit of $2,000, a balance of $8,000 and an additional deposit due May 1st and the balance due on July 1st. Again, all deposits non-refundable.
The same is true of the sale of February 12th Invoice #278875 for a chinese carpet. It shows a deposit of $1,000 non-refundable, the balance due of $3,000. However, it also shows a $1,000 further deposit due May 1, 1992 with the balance due July 1st, 1992.
The sale of a caucasian rug on March 27th Invoice #378876 indicates a sales price of $3,000, with a deposit of $1,500 and a balance due of $1,500 on August 1, 1992.
Each of the other items sold on March 27th also has a final balance due of August 1st, 1992.
The vintage door (the sale date of which is missing) shows a deposit of $250, with a balance due of $1,000 as of December 7, 1992.
On Invoice #278892 for a flowered picture appears the notation "on hold since August 1, 1992 paid in full."
On September 5, there appears an agreement between Tom Sutkowski and Kathleen Tarro "to store one brass bed at 9 Sunnyridge until on or before October 1st, 92 (owner will pick up)."
On September 15, 1992, Invoice #278894, there is a receipt for payment of $1,000 and also for an additional $128 for miscellaneous unpaid items in the amount of $65 and a gallon of custom paint for $53.
Invoice #278898 indicates not only a sale of a large eight arm chandelier but also a large chandelier (brass and crystal) and a green and brass tiffany type light, all included in the $23,500 with a deposit of $5,000 and a balance of $18,500 due on or before February 1, 1993. Having become suspicious of the Tarros, the plaintiff stopped payment on the $5,000 check.
The court finds that during the course of the sales of these items to Mr. Sutkowski, Mrs. Tarro made representations as to the age, manufacture, quality, value and genuineness of CT Page 11468 them as alleged in the complaint. She claimed that many were old, antiques which had been in her family for many years and were part of her deceased mother's estate.
Mrs. Tarro also represented various rugs to be what she labeled them on the invoices and worth the same or more than she was selling them for.
The plaintiff was primarily interested in buying furniture to decorate his home and Mrs. Tarro volunteered decorating information to induce him to buy. He did not hire Kathleen Tarro as a decorator but he admits that he did learn a lot from her. He spent much time with her and received much information about antiques and furniture. The plaintiff did not set the price on any of the items. Mrs. Tarro put the labels as to the kind of rugs on the invoices and she set the prices.
Out of all the items sold to him, plaintiff received only the following: Two of the four rugs sold on the first date;[2]
one having a sale price of $1,500 and one having a sale price of $500, Exhibits 6 and 7; the Gilbert Clock, Exhibit 9; Chinese Vase, Exhibit 10; a box containing two wine glasses and a vase, Exhibit 11. The porch swing and all of the items that went with it and a composition garden figure of an oriental woman were delivered to his home.
The porch furniture for which plaintiff had paid approximately $3,000 had an appraised value of approximately $800. The Gilbert clock for which he paid $1,000 was worth only $100. Two wine glasses and vase represented as crystal were pressed glass worth only $5 and the oriental design vase for which he paid $450 was worth on appraisal only $75.
As to each of these items, the court believes that the defendant Kathleen Tarro recklessly misrepresented to the plaintiff the manufacture, genuineness, age, and value; that the plaintiff relied on these representations and would not have purchased these items if these representations had not been made to him. The court finds clear, convincing and satisfactory evidence that as to these items the plaintiff was the victim of a fraud on the part of Mrs. Tarro and her husband who worked with her and who received the proceeds.
In addition to the fraud alluded to re the exhibits CT Page 11469 mentioned above, the court is of the opinion that Mrs. Tarro made many false representations to Mr. Sutkowski with respect to the sale of the remaining items when in fact by her own admission she had little or no knowledge of same and that she lied to Mr. Sutkowski as to the origin of a large number of these items when she referred to them as having been in her mother's estate.
In sworn testimony, Mrs. Tarro stated that she had no expertise in rugs and antiques and no idea as to where her rugs and carpets were made yet on March 27, 1992 she sold to Mr. Sutkowski seven rugs for $26,850, and on February 12, 1992 sold a rug for $4,000. The court as stated above believes that Mrs. Tarro did represent herself as being knowledgeable about these oriental rugs and did represent them to be what she labeled them to be on the invoices. The court agrees with Mr. Namnoum that when one is selling what she calls Oriental or Indian or Caucasian or Chinese rugs and so lists them on an invoice she is representing them as genuine.
Fraud is not to be presumed but must be proven by clear and satisfactory evidence. Miller v. Appleby, 183 Conn. 51,55 (1981); Alaimo v. Roy, 188 Conn. 36 (1982). Fraud and deceit are not easily defined, Miller v. Appleby, supra. Fraud must be proven by clear, concise and unequivocal evidence, Alaimo v. Roy, 188 Conn. 36, 39 (1982); Kilduff v.Adams, Inc., 219 Conn. 314, 330 (1991). In order to prevail in a claim of fraud, the plaintiff must prove (1) a representation made as a statement of fact, (2) that the representation was untrue and known to be untrue by the party making it, (3) that it was made for the purpose of having the other party act upon it, (4) the other party was in fact induced to act on it, (5) that he did so to his injury.Harper v. Adametz, 18 Conn. Sup. 435; Miller v. Appleby,
supra; Kilduff v. Admas, Inc., supra.
In this case there is ample evidence to convince the court that the defendant Kathleen Tarro made many misrepresentation with respect to the items which she sold to the plaintiff. As to some of these representations, it is clear that she knew they were false. For example, many of them she stated came from her mother's estate. However, she as administrator of her mother's estate in a sworn affidavit to the Probate Court stated that her mother had no assets. CT Page 11470
As to other items, she made definite representations, some of them in writing, for example when she labeled the various rugs with actual names, such as Kirman, or labeled them as oriental. However, in her testimony before this court she stated that she knew nothing about antiques. In the opinion of this court, these misstatements were made recklessly and satisfy the requirement that the statements were fraudulently made. They constitute "legal fraud" which has become recognized by the Connecticut courts. The element of fraudulent intent is satisfied by the fact that the statement was made without reasonable grounds or that it was made recklessly. O'Neill v. Conway, 88 Conn. 651; Sawyer v.Redmond, 103 Conn. 237; Clark v. Haggard, 141 Conn. 668.
In the opinion of the court, the plaintiff relied upon the misrepresentations made by the defendants. He was colorblind and knew very little about antiques or oriental rugs and had spent over $50,000 purchasing rugs and carpets from the defendant which she represented to be Oriental, Indian, etc.
The fact that the plaintiff failed to check the representations of the defendants does not bar recovery by him in an action based on fraud. Wilson v. Nichols, 72 Conn. 173. Ordinarily the recipient of a statement is not required to make an investigation to check on the veracity of the nature of the statements. Water Commissioners v. Robbins, 82 Conn. 623;Kavarco v. T.J.E., Inc., 2 Conn. App. 294 (1984).
The defendants also committed fraud when they sold to the plaintiff items which they represented to have had considerable value and/or age and failed to deliver to him the bulk of the items purchased. There was also fraud in that they sold these items to him misrepresenting their value, origin, manufacture, etc., for the purpose of inducing him to buy them when they knew or should have known that the value of some or all of them was far less then represented.
In addition to the purchase of furniture and oriental rugs, as discussed above, Mrs. Tarro represented Mr. Tarro as being an expert in the restoration of victorian houses and as a result of these representations, Mr. Sutkowski hired the Tarros to do some landscape work on the banks in front of their home. For this purpose Mrs. Tarro drafted a contract marked Exhibit 5. The contract called for $1,850 to $2,000. CT Page 11471 The work was completed and Mr. Sutkowski paid $2,000 for the work. Mr. Sutkowski also entered into an agreement with Mr. and Mrs. Tarro to have work done on the interior of his home. This included some carpentry work, stretching of a canvas ceilings, some wiring for a chandelier and wiring for some electrical heat for which Mr. Sutkowski had purchased the heating units by himself. Mr. Tarro did the requested work and also installed the heating units without authorization. He charged $2,500 for the job which sum was paid for by Mr. Sutkowski. There was no written contract for this job. The Tarros were not registered as home improvement contractors and although the landscape contract was in writing, it did not conform to the requirements of Section 20-429 of the C.G.S. In addition to this, there were admissions in Exhibit P by Mrs. Tarro that they were in violation of the Home Improvement Act.
Despite an attempt to have the defendant painted as the general contractor on the job, this court finds that he was not the general contractor, simply the owner. With respect to the defendants' claim that $4,500 allegedly paid for the landscaping and interior work were really payments for a watch or a couch, the court finds to the contrary.
Section 20-429(a) C.G.S. provides:
 "No home improvement contract shall be valid or enforceable against an owner unless it (1) is in writing, (2) is signed by the owner and the contractor (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor, (6) contains a notice of the owner's cancellation rights in accordance with the provisions of Chapter 740, (7) contains a starting date and completion date and (8) is entered into by a registered salesman or registered contractor.
Home improvements include but are not limited to improvements, repairs and alterations done to landscaping, flooring and doors of private residences. A violations of the Home Improvement Act is deemed an unfair or deceptive trade practice under subsection (a) of Section 42-110b C.G.S. and Section 20-427(b) C.G.S. CT Page 11472
In the opinion of this court, the Tarros acting in concert violated the Home Improvement Act and in so doing violated the Connecticut Unfair Trade Practices Act.
In addition to the violation of CUTPA found with respect to the violation of the Home Improvement Act, this court, as indicated earlier, finds that the defendants were in business together and were engaged in the conduct of a trade or commerce. They advertised the sale of antiques and collectibles on more than one occasion. Elizabeth Fox with whom there was litigation later had responded to an advertisement in 1990 and the Innanones also responded to an ad in the new Haven Register. There was also a judicial finding that the Tarros were engaged in trade or commerce by Judge Koletsky in the Fox case. (See footnote p. 8).
It appears to this court that the large house with the vast amount of furniture in it in the light of the rest of the evidence in the case amounts simply to a showcase in which to display their wares.
In the opinion of this court there is clear, satisfactory and convincing evidence that the Tarros committed fraud and misrepresentation with respect to the items sold to Mr. Sutkowski. The court also finds that there is clear and convincing evidence of the violation of the Home Improvement Act and that there is clear and convincing evidence of the violation of CUTPA.
The plaintiff has been injured to the extent of the full amount that he paid for his undelivered property. Having indicated in her testimony that she knew nothing of the value of antiques and oriental rugs, defendant made her representations recklessly leaving the plaintiff, in the light of the appraisals which were made, having a claim to a question mark as to the true value of the items for which he paid $75,043 and failed to receive delivery.
In the opinion of the court, the plaintiff is entitled to reasonable attorney's fees both on the basis of the fraud and misrepresentation and on the basis of the two violations of CUTPA. The question of attorney's fees will be presented at a separate hearing, the time of which will be agreed upon by the parties and the court shortly after the publication of this Memorandum of Decision. CT Page 11473
The court finds that the plaintiff is entitled to compensatory damages in the amount of $73,873 ($75,043 in sales less $1,170, the value of the items that were delivered). Plaintiff is also entitled to interest on same in accordance with Section 37-3a C.G.S. Interest will run from the date of the last payment by the plaintiff, i.e. November 7, 1992, through the date of this Memorandum of Decision.
A violation of CUTPA permits "A remedy far more comprehensive than the simple damages recoverable under common law." Hinchcliffe v. American Motors Corp., 184 Conn. 607,617 (1981). Thus, under Connecticut law an aggrieved plaintiff may recover punitive damages, in addition to attorney's fees. S S Tobacco Candy Co. v. Stop ShopCompanies, Inc., 815 F. Sup. 65 (D.Conn. 1992).
Based upon the great disparity between the appraised value and the sale price of those items which were appraised and entered into evidence in this case, and in view of the very large sums of money spent for articles represented as antiques, collectibles and Oriental, Persian, Indian, etc., rugs and the substantial doubt cast upon the value of these items by the conduct and lack of credibility as demonstrated at trial by the defendants, this court considers the actions of the defendants to be a very serious violation of CUTPA and worthy of punitive damages.
Accordingly, in addition to the compensatory damages with interest already referred to, the attorney's fees to be determined at a future date and costs, this court awards punitive damages in the amount of $10,000.
With respect to the violation of the Home Improvement Act, although the court has taken this into account in arriving at its decision that there was a violation of CUTPA, the court is not awarding any damages with respect to same. The work was done, albeit some of it was not authorized, and although it was all done clearly in violation of the Home Improvement Act, it was accepted by the plaintiff and there is no appreciable evidence that it was defective.
As is evident from the court's judgment on the complaint, the court can find no credible evidence to substantiate the defendants' three special defenses or either counterclaim. A CT Page 11474 sale labeled "final or as is" will not overrule clear evidence of fraud. The defendants set the prices on the goods sold and there was no hiring of defendant as a decorator and no contract as such. At best, some decorating information was imparted as part of the sale of the rugs and furniture, etc.
Judgment may enter for the plaintiffs on the amended complaint in the amount of $73,873 plus interest thereon at 10% from November 7, 1992 through the date of this decision, plus $10,000 together with costs and reasonable attorney's fees, same to be set at a separate hearing.
Judgment may enter on the counter-claims for the plaintiffs.
Hale, Judge Referee